**STATE of Alaska, Appellant,**

v.

**CITY OF ANCHORAGE, Appellee.**

No. 1743.

Supreme Court of Alaska.

Sept. 12, 1973.

---

John E. Havelock, Atty. Gen., Juneau, John A. Reeder, Jr., Asst. Atty. Gen., Anchorage, for appellant.

John W. Spencer, City Atty., David G. Shaftel, Asst. City Atty., Anchorage, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

BOOCHEVER, Justice.

The central issue in this controversy is whether the State of Alaska or the City of Anchorage must bear the expense of jury trials for defendants charged with viola-

tions of misdemeanor provisions of city ordinances.[1] This issue in turn involves the construction of AS 22.15.270.[2]

Prior to statehood Alaskan cities of the first class maintained and paid for their own court systems to handle violations of their ordinances. Those courts were presided over by an elected municipal magistrate.[3] The Alaska State Constitution provided for a unified court system.[4] By statute [5] and rule of court [6] provisions were made for the district court to have jurisdiction over violations of municipal ordinances and for the district judges to preside over the courts of political subdivisions. Thus a political subdivision such as

---

1. In Baker v. City of Fairbanks, 471 P.2d 386, 401 (Alaska 1970) we held that under the Alaska Constitution, " . . . in any criminal prosecution, whether under state law or for violation of a city ordinance, the accused upon demand is entitled to a jury trial." In defining what constitutes a "criminal" prosecution for purposes of the right to jury trial we stated,

> [W]e define the category of "criminal" prosecutions as including any offense a direct penalty for which may be incarceration in a jail or penal institution. It also includes offenses which may result in the loss of a valuable license . . '. . It must also include offenses which, even if incarceration is not a possible punishment, still connote criminal conduct in the traditional sense of the term. Id. at 402 (footnotes omitted).

2. AS 22.15.270 provides:

> *Retention of fines, etc., by political subdivisions.* All fines, penalties and forfeitures resulting from violations of ordinances of political subdivisions shall be returned to the political subdivision whose ordinance is involved in the manner provided by rule of the supreme court. The *political subdivision shall pay* to the state administrative director of the court for transfer to the general fund of the state such sums as will pay *for the judicial services rendered to the political subdivision by the district judge or magistrate rendering the services.* Fines, penalties and forfeitures imposed after appeals accrue to the state, unless the appeal is prosecuted by the political subdivision. (Emphasis added.)

3. §§ 16–1–67, 68, 70 ACLA (1949).

4. Alaska Const., art. IV, § 1, provides in pertinent part: "The *courts shall constitute a unified judicial system* for operation and administration." (Emphasis added.)

5. AS 22.15.060(a) provides: (a) The *district court has jurisdiction* of the following crimes:

> . . .
>
> (2) a *violation of an ordinance of a political subdivision.* (Emphasis added.)

6. Alaska Administrative Rule 41 provides:

> *District Judges and Magistrates to Act as Judges for Political Subdivisions.* (a)

> *Where a district judge is stationed near a court of a political subdivision, the district judge shall preside over the court of the political subdivision.* The district judge shall hold such sessions of court as are required by the laws of the political subdivision and shall co-operate in every reasonable manner with the officials and enforcement officers of the political subdivision to the end that judicial services of a superior quality are rendered.
>
> (b) *If no district judge is stationed near a court of a political subdivision, a magistrate shall preside in such court.* The magistrate shall hold such sessions of court as are required by the laws of the political subdivision and shall co-operate in every manner with the officials and enforcement officers of the political subdivision to the end that judicial services of a superior quality are rendered.
>
> . . . .
>
> (d) *The administrative director of courts shall furnish to the district judges and magistrates concerned a copy of the current memorandum of agreement between the state and the political subdivision for which judicial services are being rendered, and they shall at all times be governed by the terms thereof.* Should any difference of opinion arise over the interpretation or application of the agreement, the judicial officer shall immediately notify the administrative director of courts in writing with a copy to the presiding superior court judge of his district. Until the matter has been clarified, the judicial officer shall co-operate in every reasonable manner so as to preserve harmony between the judiciary and the officials and enforcement officials of the political subdivision.
>
> (e) Nothing in this rule should be interpreted to authorize the creation of a court independent of the unified state court system, by or for a political subdivision. *All courts within the state, with the exception of federal courts, are considered as courts of the unified state court system.* (Emphasis added.)

the City of Anchorage can prosecute violations of its ordinances by utilizing this court system.

As 22.15.270 [7] provides that where the political subdivision does so utilize the court system: "[a]ll fines, penalties and forfeitures resulting from violations of ordinances of political subdivisions shall be returned to the political subdivision whose ordinance is involved . . . ." and "[t]he political subdivision shall pay to the . . . [state] . . . such sums as will pay for the judicial services rendered to the political subdivision by the district judge or magistrate rendering the services." For many years the major municipal governments of Alaska have implemented this statute by negotiating contracts with the State of Alaska whereby the municipalities have paid all costs of running the trial courts attributable to prosecutions initiated by the municipalities.[8]

Prior to June, 1970, the State of Alaska (the "State") and the City of Anchorage (the "City") had such a contract to apportion court costs and revenues in prosecutions under municipal ordinances. Under the agreement the City was to pay the State for the salary of the "district judge" and in addition for "all other expenses of the court, including courtroom, office facilities, clerical services and personnel, office equipment, stationery, forms and service of process." After our holding in Baker v. City of Fairbanks, 471 P.2d 386, 401–402 (Alaska 1970) that the right to a jury trial under the Alaska Constitution extends to any prosecution which might render a direct penalty of incarceration, result in the loss of a valuable license, or connote criminal conduct, a dispute arose between the City and the State as to who bore responsibility for the expense of jury fees in trials under municipal ordinances.

This dispute lead to a suit by the State on April 27, 1971 asking for a monetary judgment for certain expenses accrued in rendering "judicial services" to the City from July 1, 1970 through March 30, 1971. The State also sought a declaratory judgment that the phrase "judicial services rendered . . . by the district judge . . . rendering the services" used in AS 22.15.270 includes "the services of a judge, jury fees, clerical services, recording equipment, and supplies and rent for the use of State court rooms" [*sic*] so that the City would be obligated under AS 22.-15.060(a)(2) and AS 22.15.270 to pay the State for these services in the future. The superior court judge denied the State's motion for partial summary judgment by an oral decision rendered on March 22, 1972, and entered a judgment and decree in favor of the City on May 15, 1972.[9] In his conclusions of law the judge specifically found:

5. *Judicial services is interpreted to mean services of the district judge or magistrate sitting in his judicial capacity and does not include court supplies, clerical services, recording equipment, jury fees, rent, and all other items related to the operation of the district court.*

6. The Alaska State Legislature has the power to require the City of Anchorage to pay for the costs enumerated above in paragraph 5, but *the legislature has not demonstrated an intent to require the City of Anchorage to pay for said costs.*

7. The plain language of Alaska Statute § 22.15.270 [*sic*] supports the conclusion that the legislative intent was to

7. The statute is set out at footnote 2, *supra*.

8. Alexander v. City of Anchorage, 490 P.2d 910, 916 (Alaska 1971).

9. Pursuant to a stipulation entered into between the State of Alaska and the City of Anchorage on August 31, 1971, there were cross motions for summary judgment "concerning the second paragraph of the prayer in the plaintiff State of Alaska's original complaint . . . ." That paragraph dealt with the declaratory judgment asked for by the State. The parties agreed that the other matters contained in the complaint could be resolved by negotiation after the declaratory judgment issue was resolved.

limit the costs to be reimbursed to personal services of the district court judge or magistrate. (Emphasis added.)

It is from this decision that the State appeals.

The State further contends that the superior court judge erred in failing to conclude that Supreme Court Order No. 125 required the City to pay jury fees in this case. The order, effective August 1, 1971, requires that as a condition precedent to prosecution under municipal ordinances the local political subdivision must deposit certain sums to pay for juror fees with the clerk of court or make acceptable arrangements to pay the jurors directly.[10]

### *What "Judicial Services" AS 22.15.270 Requires the City to Pay For*

▆ We are confronted with two opposing interpretations of AS 22.15.270. The City argues for a narrow construction whereby the phrase "judicial services rendered . . . by the district judge . . . rendering the services" would be construed to apply only to the salary of the judge. The State would have the phrase

construed to embrace the full panoply of judicial services rendered for the municipality at the trial level.

The City relies on principles of statutory construction to support its contention that the legislative intent expressed in AS 22.-15.270 is to limit a city's obligation to the amount due for the personal services of the presiding judge or magistrate in cases where it uses the unified court system to enforce its ordinances. The City argues that in interpreting statutes the common and approved usage of the words and phrases contained therein are presumed "unless such words and phrases have acquired peculiar meaning by virtue of statutory definition or judicial construction", citing our previous holding to that effect in Lynch v. McCann, 478 P.2d 835, 837 (Alaska 1970).[11] They maintain that since the legislature chose in this instance to modify the phrase "judicial services rendered to the political subdivision"[12] with the phrase "by the district judge or magistrate" and by the additional phrase "rendering the services", the meaning of the statute is so clear that there is no room for judicial construction

---

10. Supreme Court Order No. 125 provides:
IT IS ORDERED:
  I. That on the effective date of this Order, all municipalities and borough governments exercising criminal jurisdiction shall be required as a condition precedent to proceeding with the prosecution of a violation of its ordinances where a trial by jury has been demanded, to deposit with the Clerk of Court in which the case is being prosecuted, the sum of TWO HUNDRED TWENTY FIVE and No/100ths ($225.00) DOLLARS or such higher amount as the trial judge shall deem appropriate to cover the cost of the jury trial.
  II. The Clerk of the Court shall deposit the monies so desposited [sic] into a trust account. Jurors shall be paid from this account. Any amounts which are not paid to jurors shall be credited to the account of the municipality or borough or be refunded upon their demand. The municipality or borough government shall make up any deficiency in the trust fund.
  III. With permission of the Court, the municipality or borough government may pay jurors directly for services rendered in municipal ordinances cases as long as the

jurors are paid in accordance with the rules of this Court.
  IV. This rule shall become effective on August 1, 1971.

11. AS 01.10.040 provides:
*Words and phrases.* Words and phrases shall be constructed according to the rules of grammar and according to their common and approved usage. Technical words and phrases and those which have acquired a peculiar and appropriate meaning, whether legislative definition or otherwise, shall be constructed according to the peculiar and appropriate meaning.
We have applied this statutory rule of construction in Lynch v. McCann, 478 P.2d 835 (Alaska 1970) and Thorsheim v. State, 469 P.2d 383 (Alaska 1970).

12. In Employment Security Commission v. Wilson, 461 P.2d 425, 428 (Alaska 1969), this court stated:
Because we may assume that the legislature knew and understood the rules of grammar, we are justified in relying on such rules in the interpretation of our laws. (Footnote omitted).

other than applying the "plain" language of the statute.[13]

We have no quarrel with the proposition that where the legislative branch has expressed its intent on a matter within its power in language so unambiguous as to leave no doubt as to the meaning or scope of the result dictated, the function of the courts is simply to apply that language.[14] However, the instant statute does not fall within that class. The City concedes that the phrase "judicial services" is not inherently limited to the personal services of the presiding judge or magistrate.[15] In the absence of the modifying phrases limiting the City's liability to those services rendered by the district judge or magistrate the statute might be viewed as assessing the City for any and all judicial services "rendered" for it, even those services the City would receive in any appeal to a higher court. In this light the disputed portion of the statute, "by the district judge or magistrate rendering the services", may be considered to be in the nature of a qualification to the general liability the City assumes by using the unified court system to enforce its ordinances. That is, under this statute, the City is to pay only for those services "rendered" by the district judge or magistrate and not those services "rendered" on appeal.

The scope of that qualification then turns on the meaning of "judicial services rendered". While the City would have us assume that the term is inherently limited to the personal services afforded by the judge or magistrate so as to impute to the statute an intent to assess the City only for the judicial officer's salary,[16] we cannot agree that the term is "so plain as to leave nothing for interpretation".[17]

This court was faced with the almost identical issue in Alexander v. City of Anchorage, 490 P.2d 910, 915–916 (Alaska 1971), with regard to the effects of our holding that under the Alaska Constitution the right to an attorney at public expense

13. The City directs our attention to this court's language in Alaska Mines & Minerals, Inc. v. Alaska Industrial Bd., 354 P.2d 376, 379 (Alaska 1960):

The language of the statute is unambiguous. It clearly expresses the legislative intent. This being so, it must be enforced as it reads, and should not be modified or extended by judicial construction so as to enable appellant to avoid the consequences of non-compliance [sic] with its express terms.

14. See State v. Duggan, 15 R.I. 403, 6 A. 787, 788 (1886), in which the court stated:

It is an elementary proposition that courts only determine, by construction, the scope and intent of a law when the law itself is ambiguous or doubtful. If a law is plain, and within the legislative power, it declares itself, and nothing is left for interpretation. See also Marmon v. Railroad Retirement Bd., 218 F.2d 716, 718 (3rd Cir. 1955); Allen v. Multnomah County, 179 Or. 548, 173 P.2d 475, 477 (1946).

15. In the brief filed for this appeal the City admits that the use of "judicial services" without modifying language in AS 22.05.020 "suggests that this statute [AS 22.05.020] has the type of broad scope which the State is proposing with respect to AS 22.15.270." AS 22.05.020 provides in pertinent part:

[The Supreme Court] may prescribe by rule the fees to be charged by all courts for *judicial services*. (Emphasis added.)

16. Had the legislature intended the City's liability to be limited to payment of the salary of the district judge or magistrate, it could have clearly manifested such an intention by specifying that "the political subdivisions shall pay to the state . . . such sums as will pay for the *judicial salaries* of the district judge or magistrate" instead of using the broader term *"judicial services"*.

17. In Application of Babcock, 387 P.2d 694, 696 (Alaska 1963), this court was faced with a similar situation in deciding the meaning of "practice of law" within the scope of an exception to a requirement for admission to the Alaska Bar Association by reciprocity. We stated:

Since the Board of Governors has not defined the term "practice of law" by rule or otherwise, and since the term "active practice of law" . . . *is not so plain as to leave nothing for interpretation*, we find it necessary to resort to the rules of statutory construction in order to determine the scope and intent of the section in question. (Emphasis added; footnote omitted.)

extends to any indigent charged with "any offense a direct penalty for which may be incarceration in a jail or penal institution, which may result in the loss of a valuable license, or which may result in a heavy enough fine to indicate criminality." It is surprising that neither party to the instant appeal saw fit to direct our attention to *Alexander,* since part of that opinion dealt explicitly with AS 22.15.270, the City of Anchorage was a party in that case, and the State of Alaska filed an amicus brief dealing with the issue of who was to absorb the additional costs of court-appointed counsel for indigents charged with misdemeanor violations.

With regard to the question of who was to pay for this "public" representation we stated:

> It remains for us to determine what we mean by "public expense" when we speak of counsel for indigent defendants in misdemeanor cases that come within the constitutional category of criminal prosecutions . . . [A] defendant . . . who cannot afford to hire his own lawyer is eligible for representation by the Public Defender.
>
> *Who pays the costs of representation by counsel* is still another matter. *AS 22.15.270 requires that any fines* resulting from violations of ordinances of political subdivisions *be paid to the political subdivision, in return for which the subdivision shall pay the state for the judicial services rendered.* Based upon this statute, most of the major political subdivisions of the state have entered into contractual arrangements with the Alsaka [*sic*] Court System whereby the political subdivision has agreed to pay the salaries of the district judges, and all other costs of running the courts which are attributable to prosecutions initiated by the political subdivision. *Since the cost of providing counsel seems indistinguishable from the cost of providing these judicial*

*services, it should be treated in the same way and fall, in cases such as the present, upon the City of Anchorage.* 490 P.2d at 916 (emphasis added).

*Alexander* clearly recognized that under AS 22.15.270 the obligation the City incurs by using the unified court system to prosecute violations of municipal ordinances is to pay for all of the costs incurred in providing the judicial services rendered. In exchange the City receives the revenues derived from the prosecutions. The case further recognized that this obligation is by no means static and will of necessity fluctuate to encompass new advances in our system of justice.

The clear import of *Alexander* would seem to be dispositive of the instant appeal since providing a jury where constitutionally required is as much a judicial service as providing appointed counsel. However, we recognize that the State was not a party to that case and that the reference to contractual arrangements in the opinion might be construed as an integral part of the decision. Thus we will take this opportunity to further clarify the extent of the City's liability under AS 22.15.270.

In determining the scope and effect of the phrase "by the district judge or magistrate rendering the services" utilized in AS 22.15.270 we are guided by the principle of statutory construction that "[i]t is fundamental in construing a statute that the intention of the legislature be determined from the words used to express it in the part involved *construed with reference to the purpose of the whole instrument."* State v. American Can Company, 362 P.2d 291, 296 (Alaska 1961) (emphasis added). The underlying policy of AS 22.15.270 is to achieve some sort of equitable distribution of the costs and benefits attendant to a political subdivision's use of the unified court system to enforce its ordinances. The municipality or borough gains the use of the unified court system and receives all fines,

penalties and forfeitures resulting from violations of municipal ordinances.

AS 22.15.270 further provides that "[F]ines, penalties and forfeitures imposed after appeals accrue to the state, unless the appeal is prosecuted by the political subdivision."

■ In light of these provisions, the most reasonable interpretation of the statute's requirement that the political subdivision pay for the "judicial services rendered . . . by the district judge or magistrate rendering the services" is that it assesses the political subdivision for all judicial services rendered to it at the district court level in exchange for those services provided by the State and resultant revenues to the political subdivision. The requirement that the services be rendered by the district judge or magistrate is to insure that the City is only assessed for services provided by the district judge or magistrate and insure that liability does not extend automatically to services rendered on appeal.[18] It follows that the City is liable for all costs attributable to maintaining the services rendered to it at the district court level which would include in addition to the personal salary of the judge: jury fees, attorney fees for indigents, rent for the use of State courtrooms, charges for clerical services, recording equipment, supplies, and other expenses inherent in maintaining the district court for the use of the City.

It was error for the trial judge to grant the City's motion for partial summary judgment on the basis of an incorrect interpretation of AS 22.15.270 and we must reverse. The case is remanded to the lower court with directions to enter partial summary judgment for the State of Alaska pursuant to the stipulation entered into between the parties on August 31, 1971.[19]

*The Effect of Order No. 125*

Supreme Court Order No. 125,[20] effective August 1, 1971, requires that as a condition precedent to proceeding with the prosecution for a violation of its ordinances a local municipality or borough must deposit certain sums to pay for juror fees with the clerk of the court in which the case is being tried, or make acceptable arrangements to pay the jurors directly. Thus the order in effect provides that the political subdivision is to prepay a portion of the obligation it incurs under AS 22.15.270.

Both parties to this appeal urge us to rule whether Order No. 125 standing by itself would be a valid exercise of this court's power over administration and procedure.[21] The City maintains that Order No. 125 is substantive in nature since it creates a new "right" in the State, to re-

---

18. Since we are not presented with the issue of what liability the City incurs for judicial services rendered on appeal where they "prosecute" the appeal, we will not reach that issue at this time.

19. See footnote 9, *supra.*

20. The full text of Order No. 125 is set out at footnote 10, *supra.*

21. Alaska Const., art. IV, § 15 provides:
*Rule-Making Power.* The supreme court shall make and promulgate *rules governing the administration of all courts.* It shall make and promulgate *rules governing practice and procedure in civil and criminal cases in all courts.* These rules may be changed by the legislature by two-thirds vote of the members elected to each house. (Emphasis added.)
AS 22.05.020 provides:
*The supreme court* is a court of record and consists of three justices including the chief justice. On December 1, 1968, the total number of justices shall be increased to five. The supreme court is vested with all power and authority necessary to carry into complete execution all its judgments, decrees and determinations in all matters within its jurisdiction, according to the constitution, the laws of the state, and the common law. It *may prescribe by rule the fees to be charged by all courts for judicial services.* (Emphasis added.)

quire the City to pay jury fees, citing Ware v. City of Anchorage, 439 P.2d 793 (Alaska 1968). The State argues that the assessment of costs for court services is inherently procedural or administrative and thus within this court's power, subject to a veto by a two-thirds vote of the legislature. Since our decision as to the proper interpretation of AS 22.15.270 encompasses the payment of jury fees by the city, Order No. 125 merely establishes procedures to be followed in making those payments. Therefore, we do not reach the constitutional issue which would have been presented had there not been legislative authority for the payment.

### The Requested Disqualification of Justices Who Promulgated Order No. 125

The City has also maintained throughout this appeal that by issuing Order No. 125, Chief Justice Rabinowitz, Justice Connor and Justice Erwin have "prejudged" the case and should be disqualified. The City takes the simple position that since Order No. 125 seems to dictate a result sought by the State under AS 22.15.-270 this court would be constrained to so interpret AS 22.15.270. This argument ignores the nature of the judicial function. Mere evidence that a judge has exercised his judicial discretion in a particular way is not sufficient to require disqualification. The type of bias contemplated as a basis for disqualification where a peremptory challenge is not available is personal bias on the part of the judge. In Ex parte American Steel Barrel Co., 230 U.S. 35, 43–44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379, 1383–1384 (1913), the United States Supreme Court addressed itself to the effect of previous adverse rulings in the same case:

> The *basis of the disqualification is that* "*personal bias or prejudice*" *exists,* by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show *not merely adverse rulings already made, which may be right or wrong,* but facts and reasons which tend to show personal bias or prejudice. *It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made,* for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. *Neither was it intended to paralyze the action of a judge who has heard the case, or a question in it,* by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard. (Emphasis added.)

The cases after *American Steel Barrel* have made it clear that what the U.S. Supreme Court was addressing itself to is the proposition that in the federal system a judge may not be disqualified on the mere basis of previous rulings, opinions, or exercises of judicial discretion.[22] Where a challenge is not peremptory a litigant must show not only that the result of a prior ruling would be adverse to him in the present case, or even that the ruling was wrong, but that it was the result of personal bias on the part of the judge which he developed from a nonjudicial source.[23]

In United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L. Ed.2d 778, 793 (1966), the Supreme Court followed Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921) stating:

> The *alleged bias and prejudice* to be disqualifying *must stem from an extrajudi-*

22. These U.S. Supreme Court and lower federal court cases were interpreting the standards of personal bias reflected in the grounds for disqualification for "personal bias or prejudice" under 28 U.S.C. § 144. While we are not bound by such federal statutory interpretation in applying our own statutes, we find their view of the needs of the judicial system persuasive.

23. See Annot. 2 A.L.R.Fed. 917, 935–941 (1969).

*cial source* and result in an opinion on the merits on some basis *other than what the judge learned from his participation in in the case.* (Emphasis added.)

This doctrine is grounded in the inherent nature of the judicial function, which is to form opinions and render decisions on the facts, law and arguments presented in each case. If a judge could be disqualified simply by showing that he had exercised his discretion in a particular way in a previous case or by issuance of a court rule or order, there would be no end to such challenges.

> Every member of this court, every member of any court, every judge, when he hears a case or writes an opinion must form an opinion on the merits and oft times no doubt an opinion relative to the parties involved. But this does not mean that the judge has a "personal bias or prejudice." If it did, the disqualification of judges would be a matter of everyday rather than the unusual and extraordinary occurrence which the statute is designed to meet. Tucker v. Kerner, 186 F.2d 79, 84 (7th Cir. 1950).

While these cases all dealt with courtroom conduct of the challenged judge or actions taken in a strict "judicial" capacity, we feel that their rationale is equally applicable to challenges to justices of this court based on its prior administrative decisions. The mere showing that this court has acted in a certain way in a prior decision under its constitutional and statutory duty to regulate procedure and administer the court system is not sufficient for disqualification absent a showing of personal bias. Any contrary result would be an abdiction of our constitutional obligations and would lead to a paralysis of the judicial system.

The judgment below is reversed and this case remanded for proceedings not inconsistent with this opinion.

ERWIN and FITZGERALD, JJ., not participating.