**Robert T. DIGGINS, d/b/a Bob Diggins Realty, Appellant,**

v.

**Dudley A. JOHNSON and Jeannett B. Johnson, Appellees.**

**No. 1548.**

Supreme Court of Alaska.

Aug. 30, 1973.

Albert Maffei, Anchorage, for appellant.

Burton C. Biss, Anchorage, for appellees.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

RABINOWITZ, Chief Justice.

This is an appeal from an unsuccessful attempt by a real estate broker to recover a commission from property owners for producing a prospective purchaser in a land sale transaction which was never consummated.

Appellees Dudley and Jeannett Johnson, husband and wife, operate a body and fender shop in Mountain View, Alaska. They own the property on which their business is located. The property is improved with a two-story building, which includes the body shop and seven apartments. The Johnsons further own a lot behind their business, which is improved with a small dwelling house.

Appellant Robert Diggins does business as a real estate broker in Anchorage, Alaska. In July 1969, Diggins learned from mutual friends that the Johnsons wished to sell their property. Appellant made an appointment with appellees, met them and examined their property. On July 23, 1969, Diggins obtained an exclusive listing of the property. The listing agreement was signed by D. A. Johnson as owner and by appellant as broker. Mrs. Johnson did not sign the instrument. The listing agreement set forth a purchase price of $135,000 and provided for a real estate commission of $10,000. The contract was to be in force if Diggins sold the property within 90 days after the termination of the agreement to anyone with whom he had negotiations "prior to the cancellation of the period." The precise terms and legal effect of this exclusive listing agreement constitute one of the disputed subjects involved in this appeal.

In mid-September, 1969, Diggins interested his neighbors, Mr. and Mrs. Bing, in the Johnsons' property. On October 22, 1969, the Bings made an offer to purchase to the Johnsons. The offer was presented to the Johnsons in the form of a receipt and agreement to purchase, which both of the Johnsons signed. This agreement was executed by appellant Diggins as agent, by the Bings as purchasers, and by Mr. and Mrs. Johnson as sellers. The exact terms and effect of this document are also in dispute in the case at bar.

The property in question was never sold to the Bings. The Johnsons refused to go ahead with the sale, and the Bings did not insist upon specific performance. Diggins commenced an action to recover a commission for producing a willing and able buyer to the Johnsons. After a non-jury trial the superior court denied relief, holding that Diggins failed to meet his burden of proof in establishing that he had an enforceable contract with the Johnsons. Appeal was taken to this court and after oral argument, while retaining jurisdiction, this court remanded the case to the superior court for additional findings in relation to the expiration date of the listing agreement, its extension, if any, and the date when Diggins first contacted the Bings. Subsequently the superior court made and filed supplemental findings of fact.

We turn now to the first questions presented by this appeal. Appellant Diggins claims that the superior court erred by not granting him the relief he sought once he established that he had produced a "ready, willing and able" purchaser. We disagree.

■ In its Supplemental Opinion, the trial court found that the exclusive listing agreement between Diggins and Mr. Johnson expired on August 23, 1969; that the agreement was not extended by the Johnsons; and that Diggins first contacted the Bings about the purchase of the property in question during the second week in September, 1969. Thus, according to the superior court's findings, Diggins first produced a prospective purchaser after the exclusive listing agreement had expired. Un-

less the superior court's findings of fact are clearly erroneous,[1] Diggins cannot be entitled to a commission[2] under the terms of the listing agreement which had expired before Diggins had contacted the Bings.

After examination of the record we conclude that the superior court's findings of fact were not clearly erroneous. In the blank provided for the expiration date on the listing agreement appears the handwritten date "August 25." The date has been crossed out and written over with "Sept. 25." At trial, Diggins testified that he himself changed this date, but that he could not recall when he made the alteration or whether he made the change at Mr. Johnson's direction. Mr. Johnson testified that according to his understanding, the listing agreement was to expire on August 23rd, 30 days from the date of the signing of the agreement. Finally, Mr. Bing testified that Diggins originally approached him concerning the possible purchase of the Johnson property in "about the second week in September," and that he originally inspected the property during the "last week in September" or the "first week in October." In view of the foregoing exhibit and testimony, we believe that there is adequate evidence in the record to support the superior court's relevant findings of facts going to this issue.

Diggins also claims he is entitled to a commission under the receipt and agreement to purchase. We hold that this agreement to purchase is invalid under Alaska's statute of frauds. This enactment, in general, requires certain agreements to be subscribed by the parties there-

1. Alaska Civ.R. 52(a) provides in relevant part:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

. . .

See also Kenai Power Corp. v. Stranberg, 415 P.2d 659, 660 (Alaska 1966).

2. The parties offer different interpretations as to whether the listing agreement provided for a broker's commission, and if so, the

amount thereof. The agreement itself is unclear, as two handwritten sums, "$0." and "$10,000.00," are superimposed upon one another. In view of our conclusion that the listing agreement expired prior to the time appellant produced potential purchasers, we decline to reach the question of whether and to what extent the agreement provided for a broker's commission.

Similarly, we find it unnecessary to consider the legal significance of the fact that only Mr. Johnson, and not both of the Johnsons, signed the listing agreement.

to and reduced to writing in order to be enforceable. More specifically, with respect to an agreement setting forth a real estate broker's commission, AS 09.25.-010(a)(8) provides:

(a) In the following cases, and under the following conditions an agreement, promise, or undertaking is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged or by his agent:

.    .    .    .    .    .

(8) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or commission; however, if the note or memorandum of the agreement is in writing, subscribed by the party to be charged or by his lawfully authorized agent, contains a description of the property sufficient for identification, authorizes or employs the agent or broker named in it to sell the property, and expresses with reasonable certainty the amount of the commission or compensation to be paid the agent or broker, the agreement of authorization or employment is not unenforceable for failure to state a consideration; . . .

In the case at bar, Diggins, the Bings and Johnsons all signed on October 22, 1969, an instrument entitled "Receipt and Agreement to Purchase": a standard real estate form consisting of an original form and three attached carbon copies of differing colors. In the lower portion of the document, under the heading "Acceptance by Seller," exists a space for the provision of the broker's or agent's commission, if any. The Johnsons contend that this space was originally blank when they signed the document, that they did not agree to pay any broker's commission on October 22, 1969, and that Diggins himself wrote in a "$10,000.00" commission together with payment and interest terms at some subsequent time. The superior court was apparently persuaded by Johnson's testimony and interpretation of the agreement to purchase. The trial court found that "the various

versions of that portion having to do with the commission, as contained in [the original and carbon copies of the agreement to purchase] were not all written at the same time" and concluded that Diggins "has not borne his burden of proof" in attempting to establish that "the parties came to a legally enforceable agreement concerning his commission."

■ We conclude there was adequate evidence adduced at trial to support the superior court's findings of fact and conclusions of law pertaining to this issue. Diggins testified that the information concerning the $10,000 broker's commission was not inserted in the appropriate space on the purchase agreement until some time after the Johnsons had signed the instrument, that he himself supplied the missing information, and that he filled in the blank "whenever [Mr. Johnson] told me." Mr. Bing testified on cross-examination that some of the changes made to the various terms of the agreement were made after the Johnsons had signed the instrument. And Mr. Johnson testified under cross-examination that, "I didn't agree to pay [appellant] a commission." Moreover, as the Johnsons contend, the handwritten figures and terms of the commission appearing on the duplicate originals do not exactly conform to the handwriting on the original copy of the purchase agreement. This latter discrepancy tends to support the Johnsons' contention that the information pertaining to the commission was added to the agreement to purchase at some time subsequent to the signing of the document. Since the amount and terms of the broker's commission were not a part of the purchase agreement at the time when all of the parties subscribed to the writing, the subsequent addition to this instrument which was not signed by the Johnsons failed to comply with the requirements of the statute of frauds. Accordingly, the purported agreement to pay Diggins a $10,000 commission, together with interest and payment terms, is unenforceable under the agreement to purchase.

Diggins also maintains that even though he failed to produce a buyer who was "willing and able to purchase on the terms of the listing," he did produce purchasers who made a counter offer which was accepted by the Johnsons when the latter signed the agreement to purchase. Diggins contends that he thus "earned" his $10,000 commission, presumably under a theory of quantum meruit, quasi-contract or implied contract; that "when the Appellees accepted the purchase price on different terms, the Appellees thereby became liable for payment of the commission." We disagree.

The overwhelming weight of the authority in other jurisdictions holds that a real estate broker may not recover the value of his services in quantum meruit when he has failed to comply with a statute specifically requiring written contracts for commissions for the production of a purchaser for real property.[3] The policy behind the majority view is sensible, for to permit a broker to recover compensation by virtue of a quasi-contract, an implied-in-law agreement, would be to undermine the purpose of the statute of frauds. In the instant case, we decline to circumvent the salutory legislative requirement that agreements authorizing a broker to sell real estate for a commission must be in writing. We hold that the superior court committed no error in failing to award a $10,000 commission to appellant under a quantum meruit theory.

Since we have concluded that Diggins was not entitled to a commission under the expired listing agreement, that the commission provisions of the agreement to purchase were unenforceable under the statute of frauds, and that the legislative policy of the statute of frauds bars a quantum mer-

uit claim, the judgment of the superior court is affirmed.

Affirmed.

FITZGERALD, J., not participating.

---

3. *See, e. g.,* Louisville Trust Co. v. Monsky, 444 S.W.2d 120 (Ky.1969), overruling Clinkinbeard v. Poole, 266 S.W.2d 796 (Ky.1954); Beazell v. Schrader, 59 Cal.2d 577, 30 Cal. Rptr. 534, 381 P.2d 390 (1963); Ekelman v. Freeman, 350 Mich. 665, 87 N.W.2d 157 (Mich.1957); *see generally* Annot., 41 A.L.R. 2d 904 (1955).