Ralph A. VALKAMA, d/b/a Globe Real Estate, Appellant,

v.

Frank W. HARRIS and Wallace Martens, Appellees.

No. 3053.

Supreme Court of Alaska.

March 3, 1978.

Julie A. Clark, Paul J. Nangle & Associates, Anchorage, for appellant.

Peter A. Galbraith, Murphy L. Clark, Anchorage, for appellees.

OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR and BURKE, Justices.

CONNOR, Justice.

The question raised by this appeal concerning a real estate broker's commission is whether the superior court properly granted appellees' motion for summary judgment. We are of the opinion that appellees were entitled to judgment as a matter of law. Therefore, we affirm.

█ In ruling on a motion for summary judgment all reasonable inferences from the proofs offered are drawn against the moving party, and are viewed in the light most favorable to the party opposing the motion. *Wilson v. Pollet*, 416 P.2d 381, 383–84 (Alaska 1966). Keeping in mind this principle, we believe that the facts of this case may be fairly stated as follows.

Appellant Ralph A. Valkama entered into a broker's employment contract with appellees Frank W. Harris and Wallace Martens on December 4, 1974. By terms of that agreement, Valkama obtained a listing of certain property, lots 1 through 10 of the Meteor Heights Subdivision in Anchorage, owned by Harris and Martens. The first page of the contract, which was a standard form, provided that Valkama would get a commission of nine percent of the selling price of $825,000.00 if he (a) found a buyer who was ready, willing and able to enter into a purchase for the price and terms stated in the contract, or acceptable to Harris and Martens; or (b) before the listing expired, placed the owners in contact with a buyer to whom they sold the property within 90 days of the expiration date of the contract, which was December 16, 1974. The second page of the agreement contained the specific terms of purchase acceptable to the owners, together with provision for the payment of the broker's commission in installments.

On February 4, 1975, after the broker's employment agreement had expired, Valkama obtained an earnest money agreement from Owen M. Bartlett for the property, but the terms offered by Bartlett differed substantially from those stated in the broker's employment agreement. Valkama claims that thereafter Harris and Martens made a counteroffer to Bartlett. Martens and Harris deny this.

On February 5, 1975, Valkama filled in the blanks on page one of the broker's employment agreement so as to extend his brokerage contract to February 20, 1975. He signed this extension, but Harris and Martens did not. Valkama admits that he may never have mentioned this extension to Harris and Martens.

Valkama met with Harris and Martens several times after February 4, and Harris eventually asked Valkama for an introduction to Bartlett.

A luncheon meeting between appellees, appellant, and Bartlett was held in mid-April of 1975. The parties discussed the possibility of a joint venture for developing the property.

On July 31, 1975, Harris, Martens, and Bartlett signed a partnership agreement under which Harris and Martens conveyed to the partnership lots 8, 9, and 10 of the Meteor Heights Subdivision. Bartlett made no capital contribution to the partnership, but agreed to supervise the construction of an apartment building on the lots. Lots 1 through 7 remained in the sole ownership of Martens and Harris and were not subject to the joint venture with Bartlett.

On September 8, 1975, Valkama filed suit against Harris and Martens, alleging that they owed him $74,250.00 under the broker's employment agreement or, in the alternative, $75,000.00 for the reasonable value of his services.

After depositions had been taken of Valkama, Harris, and Bartlett, appellees successfully moved for summary judgment. The trial court ruled that any quantum meruit claim was barred by this court's holding in *Diggins v. Johnson*, 513 P.2d 660 (Alaska 1973). The trial court also held that Valkama's recovery was barred by AS 08.88.341, which requires that all real estate listings be in writing, be signed by the seller and, if an exclusive listing, have a definite expiration date. The trial court further noted that there was no evidence that the purchase of lots 8, 9, and 10 was initiated during the period of the listing. This appeal followed.

We turn now to the principal question presented by this appeal.[1] Appellant claims that the superior court erred in granting summary judgment because there was a material issue of fact as to whether appellees waived the requirement of an expiration date on the broker's employment contract. It is appellant's position that appellees waived the statutory requirements[2] that a real estate listing be in writing and have a definite expiration date.

Whether the requirement of a written expiration date in real estate listings may be waived by the parties has not previously been considered by us. Case law from other jurisdictions indicates that the termination date of a brokerage contract may be waived. *See* Annot. 27 A.L.R.2d 1348 (1953), and cases cited therein. The rule as stated in *Kraemer v. Smith*, 179 Cal.App.2d 52, 3 Cal.Rptr. 471 at 473 (1960), is that where the seller

" 'urge[s] and encourage[s] the broker to continue his efforts to find a purchaser for the property and the broker [does] so continue with the knowledge, approval and encouragement of the owner, and, as a result of the broker's efforts, a purchaser to whom the owner sold the property was produced, *under such circumstances* the time limit in the written contract must be considered as having been waived and the broker is entitled to his commission. To hold otherwise would in our opinion permit the use of the Statute of Frauds to perpetrate a fraud.' " (Emphasis in original) quoting from *Baker v. Curtis*, 105 Cal.App.2d 663, 669–70, 234 P.2d 153, 157 (1951).

The California court noted that such a waiver is terminable by the owner at any time. It continues only as long as there is encouragement by the owners, and the broker continues his efforts. *Kraemer v. Smith, supra*, at 474. Whether there has been a waiver is generally a question of fact. *Id.* at 473. However, in the instant case, since we find on other grounds that Valkama was not entitled to his commission, the trial court's summary judgment may be affirmed notwithstanding the waiver question. *See, e. g., Northern Lights Motel, Inc. v. Sweaney*, 563 P.2d 256, 257 (Alaska 1977) (opinion on rehearing); *Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1017 n. 12 (Alaska 1976).

■ Under the terms of the agreement, Valkama was to have received a commission of nine percent of the selling price of $825,-000.00, or $74,250.00. In order to earn his commission, Valkama had to find a buyer for all ten lots. In fact, there never was a sale of any of the lots. Lots 1 through 7 never changed hands. Lots 8, 9, and 10 were conveyed to a partnership consisting of the original owners and Bartlett, but Bartlett did not furnish any money to the partnership, agreeing instead to supervise the construction of an apartment building on the three lots as his consideration for entering into the partnership agreement.

■ AS 08.88.361 provides that a real estate broker earns his commission when he finds a buyer "willing and able to purchase at a price and on terms set by the seller, providing negotiations with the buyer were

1. Appellant also argues that appellees admitted that there had been an extension of the broker's employment contract, and that this admission would bring the extension within an exception to the statute of frauds under AS 09.25.020(4). We do not find any such admission in the record. Appellant claims that Harris admitted to typing a counteroffer including a provision for a broker's commission. This statement is unsupported by the record and appellees have consistently denied having made any counteroffers. Harris stated that he had typed the document referred to by appellant as a "counteroffer" on December 4. Harris said that he did not recognize the figures which had been written in on that document, that he did not know who had written the figures, when they had been written, or what they meant. We find from the record that appellees never admitted to extending the broker's employment agreement. Lacking such an admission, there is nothing to support Valkama's contention that some scribbled figures, made by an unidentified person, on the broker's original employment agreement of December 1974, can amount in law to a "counteroffer." We decline to discuss the point further.

2. AS 08.88.341. *See also* AS 08.88.361, which defines the circumstances under which a real estate broker earns a commission.

initiated during the term of a valid listing agreement and within the time limit of the listing." Here, however, there was no sale and no price. A further problem is that without a selling price we have no way of computing Valkama's commission.[3]

In addition, even assuming that the expiration date of the contract had been waived, there is no evidence in the record that Valkama made any efforts on behalf of the owners after the mid-April meeting. Even if we were to find that a "sale" had taken place, Valkama's agreement provided that he would earn a commission only if he found a purchaser who bought the property on terms agreeable to the sellers within ninety days from the expiration of the listing. The July 31 partnership agreement took place not only more than ninety days after the December 16 expiration date and more than ninety days after the February 20 date written into the agreement by Valkama; it occurred more than ninety days after Valkama brought Bartlett and the owners together in mid-April. Thus, by the express terms of the agreement, Valkama would not have been entitled to a commission.

Finally, we hold that Valkama may not recover for the reasonable value of his services in quantum meruit. In *Diggins v. Johnson*, 513 P.2d 660 (Alaska 1973), we held that a real estate broker may not recover the reasonable value of his services in quantum meruit when he has failed to comply with a statute specifically requiring contracts for commissions to be in writing. To allow a broker to recover compensation by virtue of a quasi-contract would be to undermine the purpose of the statute of frauds. A real estate broker, engaged in a licensed occupation, must be presumed to know that contracts for real estate commissions must be in writing, with a definite expiration date. A broker assumes the risk of having his efforts go unrewarded if he fails to get a written extension of his brokerage agreement. As we did in *Diggins*, we decline in the instant case to circumvent the statutory requirement that exclusive listing agreements authorizing a broker to sell real estate for a commission must be in writing and must contain a definite expiration date.[4]

We conclude that the statute bars Valkama's recovery in quantum meruit, that there was no sale as contemplated by the brokerage agreement, and that Valkama did not produce a purchaser within ninety days from the expiration of the listing.

AFFIRMED.

---

3. Where it is impossible for a court to fix exactly the legal liabilities of the parties to a contract, the contract will not be enforced. *Orsini v. Lathrop Co., Inc.*, 12 Alaska Reports 641, 646 (D.Alaska 1950). The amount of Valkama's commission constituted a very material part of the agreement between the parties. If this amount cannot be determined, there can be no meeting of the minds, and the court is not free to fix the terms for the parties upon equitable considerations. *See Alaska Creamery*

*Products, Inc. v. Wells*, 373 P.2d 505, 510 (Alaska 1962).

4. There may be situations in which a client, in bad faith, induces a real estate agent to orally extend a brokerage agreement. In such a situation, the client may well be estopped from asserting AS 08.88.341 as a bar to quantum meruit recovery. However, we find no evidence of bad faith in the instant case.