*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STEPHANIE SHIELDS, | ) | Supreme Court No. S-18325 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-19-01749 CI |
| v. | ) | |
| | ) | O P I N I O N |
| IDA MAE CLARK, | ) | |
| | ) | No. 7668 – August 18, 2023 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kristen C. Stohler, Judge.

Appearances: Joseph P. Josephson, Josephson Law Offices LLC, Anchorage, for Appellant. Darryl L. Jones, Law Office of Darryl L. Jones, Palmer, for Appellee.

Before: Maassen, Chief Justice, Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

CARNEY, Justice.

## I.    INTRODUCTION

A man and woman and the man's grandmother decided to buy a home that they would share. They also decided that because the woman qualified for a mortgage with better terms than the others, the mortgage would be in her name. The grandmother sold her home to provide money to buy the shared home and signed a gift letter to enable the woman to qualify for a mortgage.

The relationship between the man and woman deteriorated and she tried to sell the home. She refused to repay the grandmother the money the grandmother had contributed to the home purchase. The grandmother sued her.

The superior court determined that the grandmother had not provided the money as a gift. The court also concluded that a written agreement the woman had signed confirmed their oral agreement to jointly buy the home and that therefore their agreement did not violate the statute of frauds. The court ordered the woman to repay the grandmother the money she had contributed to the home purchase, as well as a portion of the grandmother's attorney's fees.

The woman appeals. We affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

After dating for a few years, Stephanie Shields and Timothy Wilkinson decided to combine their households in 2017. At that time Wilkinson was living in a home owned by his grandmother Ida Mae Clark. Clark owned two homes; Wilkinson lived in one and she lived in the other. After Clark suffered a mild stroke, Shields, Wilkinson, and Clark agreed that it would be best for her to live with them. They decided to pool their resources to purchase a home. Shields hired a realtor she previously worked with to help. The realtor helped them find and purchase a new home, and he helped Clark sell the home that Wilkinson lived in.

After they found and made an offer on a new home, Shields applied for a mortgage because she had a higher credit score than Wilkinson and she was eligible for a Veterans Administration (VA) mortgage. Clark sold the home Wilkinson lived in to provide funds to qualify for the loan. On June 23, 2017, Clark transferred $111,213.14 to Shields from the sale of her home. From that total $5,000.00 was paid as rent to the sellers for the time before the VA mortgage closed; the remaining amount was used for the down payment on the home.

On July 5, while Wilkinson was out of town, Shields brought Clark to the mortgage office. At the mortgage office Clark was given a form entitled "Gift Letter" to sign.[1] The line on the form that stated "I have made a gift of $_____" was completed with "$111,213.14 to Stephanie L. Shields" and identified her as Clark's "granddaughter." The form also stated, "No repayment of the gift is expected or implied in the form of cash or by future services of the recipient." Clark asked for Wilkinson to join them three times before she agreed to sign the letter. Shields subsequently received the VA mortgage; it and the title to the home were solely in her name.

Wilkinson learned of the gift letter after he returned. He contacted an attorney to "protect[] . . . the down payment on the house." The attorney drafted a memorandum agreement for Wilkinson and Shields. After several drafts Shields signed the agreement on February 24 because she wanted to ensure that if she or Wilkinson "failed to pay [their] half of the bills, then that amount [would] be made good at the time of payout." The agreement outlined how funds would be divided between Shields and Wilkinson upon the sale, transfer, or other disposal of the house and acknowledged that "the parties used $106,000.00 from Timothy Wilkinson's family" to purchase the property.

Shields and Wilkinson's relationship began to deteriorate. On August 31 Shields posted a notice to quit on Clark's bedroom door. The notice required Wilkinson and Clark to vacate the home "at least 30 days from the date" of receipt and informed them that the house was being sold. On September 25 Clark's attorney sent Shields a demand letter that asserted Clark's equity interest in the property. When Shields did not respond, Clark filed a complaint in June 2019.

---

[1] The mortgage broker later testified that gift letters are used by lenders to document and verify that third-party funds used for down payments were obtained as a gift rather than a loan that might constitute a competing interest in the property.

**B.      Proceedings**

Shields answered the complaint and admitted "that $106,000 for the down payment was provided by plaintiff." In August Clark moved for a preliminary injunction to "enjoin [Shields] from selling the residence . . . until the issues raised in the Complaint [could] be resolved." In her response Shields argued that Clark did not demonstrate that she would face "irreparable harm" or show probable success on the merits. The superior court denied Clark's motion for a preliminary injunction, concluding that she "fail[ed] to show an irreparable harm." But the court ordered that any proceeds from the house's sale be held in trust until further order.

A two-day trial was held in June 2021. The parties disputed the nature of the relationship between Shields and Clark and the meaning and effect of the gift letter. The superior court issued its findings of fact and conclusions of law in December.

The court found that the equity from the sale of Clark's home was "deposited into Shields's account." It noted that the real estate agent "testified [that] most of the proceeds" from the sale of Clark's home "were used for the down payment on the Property." The court concluded that "[t]he evidence clearly demonstrates the parties, together with Wilkinson, had an agreement to pool their financial resources to purchase a home" and that "Shields never refuted Clark's and Wilkinson's testimony that the money was intended to represent their investment in the Property."

The court found that Shields's claim was "simply not supported by the record." It concluded that "the parties had a valid agreement to purchase the Property jointly" and the memorandum agreement was "a sufficient writing to satisfy the statute of frauds or, in the alternative, constitutes an admission pursuant to [AS] 09.25.020(4)," which exempts an agreement from the statute of frauds based on a party's admission to making the agreement. It then ordered Shields to reimburse Clark for the $106,000 she had provided for the down payment.

Clark filed a motion for attorney's fees, and Shields filed a motion for reconsideration. The superior court denied Shields's motion for reconsideration and granted Clark's motion for attorney's fees as the prevailing party under Civil Rule 82.[2] The court entered final judgment, awarding Clark $106,000 plus interest, costs, and $13,100 in attorney's fees, for a total of $128, 395.61. Shields appeals.

## III. STANDARD OF REVIEW

"[D]etermining the intent of the parties when entering a contract is a question of fact" that we review for clear error.[3] A factual finding is not clearly erroneous unless we are "left with 'the definite and firm conviction on the entire record that a mistake has been committed.' "[4]

"Questions of law are reviewed de novo; under this standard, it is this court's duty 'to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Finding That The Parties Intended To Purchase The Property Together.

Shields argues that Clark "expressly disclaimed any interest in the . . . property" when she signed the gift letter and that "past consideration is no consideration." Clark responds that "the evidence in the record" demonstrates that she "intended that the money be repaid when the house was sold" and that Shields admitted the money was not a gift by signing the memorandum agreement.

---

[2] Alaska R. Civ. P. 82 authorizes the court to award attorney's fees to prevailing party in civil case.

[3] *Bibi v. Elfrink*, 408 P.3d 809, 815 (Alaska 2017).

[4] *Caswell v. Ahtna, Inc.*, 511 P.3d 193, 197 (Alaska 2022) (quoting *Fun Prods. Distribs., Inc. v. Martens*, 559 P.2d 1054, 1058 (Alaska 1977)).

[5] *Sisters of Providence in Wash. v. A.A. Pain Clinic, Inc.*, 81 P.3d 989, 1005 n.45 (Alaska 2003) (quoting *Langdon v. Champion*, 752 P.2d 999, 1001 (Alaska 1988)).

There is no dispute that Clark transferred the proceeds from the sale of her home to Shields to pay the down payment on a home to be shared. There is also no dispute that Clark signed the gift letter that stated that "[n]o repayment of the gift is expected or implied in the form of cash or by future services." What is disputed is Clark's intent when she transferred the money to Shields.

To determine Clark's intent the superior court looked at the evidence presented about the parties' — Shields's, Wilkinson's, and Clark's — intent when they decided to buy the house. The court found that "[t]here [was] no dispute that the parties intended to combine their households so that Shields and Wilkinson could help take care of Clark as she aged." The court considered the real estate agent's testimony that the parties wanted to sell Clark's home to combine their assets to purchase a home together. It found that the proceeds from the sale of Clark's home were transferred to Shields to fund the down payment on the property. It also noted that Clark authorized depositing the proceeds of her home into Shields's account despite her repeated request to have Wilkinson present before she made the decision.

The court considered the mortgage broker's testimony that the gift letter was required for Shields to qualify for the home loan. It also considered that after the property was purchased, the parties met with an attorney to document the Wilkinson family's interest in the property. It noted that, without challenging the family's interest, Shields signed the agreement requiring her to pay Wilkinson $106,000 from the proceeds if the property sold. The court concluded that "Shields's position that the money was an unconditional gift to her is simply not supported by the record."[6] It found

---

[6] Shields includes additional claims concerning her credibility, such as her status as "a disabled military veteran." "We . . . 'give particular deference to the superior court's factual findings when . . . they are based primarily on oral testimony, because the superior court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' " *Laybourn v. City of Wasilla*, 362 P.3d 447, 452 (Alaska 2015).

that "Shields never refuted Clark's and Wilkinson's testimony that the money was intended to represent their investment in the Property," nor did she present "testimony or evidence of a credible alternate arrangement."

Whether the transferred money described in a gift letter is in fact a gift depends on the parties' intent.[7] In *Osterkamp v. Stiles* parents gave their son and his partner a lump sum to finance the purchase of the couple's home.[8] The parents signed gift letters indicating the money was a gift.[9] The partner made monthly payments to the parents, and the mother later testified that the parents intended the money as a loan "but with no interest and without a deadline for repayment."[10] When the couple split and the partner argued that she was not required to repay any of the money, the superior court found that the money was a loan.[11] The court concluded that despite the "rebuttable presumption that transfers of funds between close relatives are not actual debts," and the gift letter's statement that "[n]o repayment of this gift is expected or implied either in the form of cash or by future services of the recipient," the evidence presented demonstrated that the partner was obligated to repay the parents.[12] We affirmed the superior court, holding that it had not clearly erred by concluding the parents had rebutted the presumption that the money was a gift.[13] Similarly here, the superior court did not clearly err by finding that Clark's contribution was intended to

---

[7] *See Osterkamp v. Stiles*, 235 P.3d 178, 191-92 (Alaska 2010).

[8] *Id.* at 183.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 191 (alteration in original). This evidence included monthly payments with "home loan" written on each check.

[13] *Id.* at 191-92.

represent her interest in the home.[14]

As the superior court concluded, "[t]he evidence clearly demonstrate[d] the parties, together with Wilkinson, had an agreement to pool their financial resources to purchase a home" and "Shields never refuted Clark's and Wilkinson's testimony that the money was intended to represent their investment in the Property." Although the memorandum agreement was signed after the transfer of funds, the parties' agreement itself preceded the purchase of the home.

**B.      The Memorandum Agreement Satisfies The Statute Of Frauds.**

Alaska's statute of frauds, AS 09.25.010, aims "to prevent fraud by requiring that certain categories of contracts be reduced to writing."[15] The statute states that "an agreement for leasing for a longer period than one year, or for the sale of real property, or of any interest in real property" is not enforceable "unless it or some note or memorandum of it is in writing and subscribed by the party charged or by an agent of that party."[16]

Shields argues that the memorandum agreement did not satisfy the statute of frauds because the statute requires both signatures to make the agreement effective and Wilkinson never signed the document. She is incorrect. The statute of frauds requires only the signature of the party charged — that is, Shields — and she signed the agreement. The agreement states that "the parties used $106,000.00 from Timothy Wilkinson's family" to purchase the property and requires that if the property is transferred, sold, or otherwise disposed of, "[t]he first $106,000.00 [goes] to Timothy Wilkinson." The superior court concluded that the memorandum agreement satisfied

---

[14]      The presumption that transfers between close relatives are not debts does not apply here. Although a handwritten entry on the gift letter identified Shields as Clark's granddaughter, that is not true.

[15]      *Alaska Democratic Party v. Rice*, 934 P.2d 1313, 1316 (Alaska 1997).

[16]      AS 09.25.010(a)(6).

the statute of frauds. The court concluded that it is a " 'note or memorandum' signed by the party against whom enforcement is sought" and "there is no serious possibility of consummating a fraud by enforcement" based on "the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence." We agree.

Shields also argues that "[t]he agreement does not state any fact or proposition of fact which creates any right or claim in anyone else, except, arguably, the statement that 'the parties used $106,000.00 from Timothy Wilkinson's family' in order 'to purchase the property.' " Clark is not explicitly named in the agreement, but the superior court relied on the memorandum agreement as corroboration of the oral contract. It then determined that the amount Clark transferred to Shields was not a gift.[17] And it is not disputed that Clark contributed to the home and is part of Wilkinson's family.

Shields compares this case to *Diggins v. Johnson*[18] and *Kiernan v. Creech*,[19] and asserts that we should not enforce a contract or quasi-contract where real estate interests are involved. In *Diggins* we declined to allow a real estate broker to recover a commission from the sellers after a property sale fell through.[20] Because there was no agreement in writing, we joined "[t]he overwhelming weight of the authority in other jurisdictions hold[ing] that a real estate broker may not recover the value of his services in quantum meruit when he has failed to comply with a statute specifically requiring written contracts for commissions for the production of a purchaser for real

---

[17] Because the superior court did not enforce the agreement and instead relied on it as a memorandum that satisfied the statute of frauds, we do not reach Shields's additional arguments related to its enforcement.

[18] 513 P.2d 660 (Alaska 1973).

[19] 268 P.3d 312 (Alaska 2012).

[20] 513 P.2d at 661-62.

property."[21]

In *Kiernan* we reversed summary judgment in a case involving a dispute over the purchase of a commercial lot.[22] The parties disagreed over "whether their oral agreement provided that they would co-own the property, or that the non-titled party would lease from the title-holder."[23] We concluded that "the substance of the oral agreement [was] a disputed fact material to resolving whether an exception to the statute of frauds applie[d]."[24] We noted that "[i]f the non-titled party can prove . . . that the parties had a contract for co-ownership with definite terms, he may be able to succeed on his claims that promissory estoppel or the part performance doctrine make [the] contract enforceable despite the statute of frauds."[25]

Neither case is applicable here. The broker's entitlement to a commission in *Diggins* sheds no light on a grandmother's entitlement to reimbursement for her contribution to a shared house. And *Kiernan*'s reversal of summary judgment based on the existence of factual issues regarding the application of the statute of frauds is not relevant to the superior court's post-trial decision here.

### C. The Memorandum Agreement Constitutes An Admission Pursuant To AS 09.25.020(4).

The superior court also held that "even if the Amended Memorandum Agreement were insufficient to satisfy the statute of frauds, it is an admission for purposes of AS 09.25.020(4), thus excepting the parties' agreement from the statute of frauds."

---

[21]    *Id.* at 664.

[22]    268 P.3d at 314.

[23]    *Id.*

[24]    *Id.*

[25]    *Id.*

Alaska Statute 09.25.020(4) provides that a contract, promise, or agreement subject to the statute of frauds may still be enforceable if "the party against whom enforcement is sought admits, voluntarily or involuntarily, in pleadings or at any other stage of this or any other action or proceeding the making of an agreement."

Shields asked the attorney who drafted the memorandum to revise it several times before she signed the final version.[26] And in her answer to the complaint, she admitted "that $106,000 for the down payment was provided by the plaintiff." The written memorandum agreement and Shields's admission in her answer support the superior court's alternative basis for concluding that Clark's reimbursement was not barred by the statute of frauds. The superior court did not err.

## V. CONCLUSION

We AFFIRM the superior court's decision.[27]

---

[26] Shields also argues that the superior court erred by awarding Clark her down payment because Clark has "unclean hands." Shields asserts that "in signing the Gift Letter [Clark] was deliberately tricking the Veterans Administration." Although Clark signed the gift letter, it was Shields who had it prepared and then used it to qualify for the VA home loan. Because she lacks clean hands herself, she cannot rely on this equitable principle. *See Alaska Cont'l Bank v. Anchorage Com. Land Assocs.*, 781 P.2d 562, 565 n.6 (Alaska 1989) ("A party seeking to invoke equitable principles must come before the court with clean hands.").

[27] Shields did not brief the attorney's fee issue she listed in her points on appeal. She has waived the issue. *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010) ("[I]ssues not argued in opening appellate briefs are waived.").