**Taso N. PROKOPIS and Theresa Prokopis, Appellants,**

**v.**

**Chris N. PROKOPIS, Appellee.**

**No. 1871.**

Supreme Court of Alaska.

March 8, 1974.

Charles E. Tulin, Anchorage, for appellants.

James R. Clouse, Clouse & Cellars, Charles K. Cranston, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR and BOOCHEVER, JJ.

OPINION

RABINOWITZ, Chief Justice.

This case involves a dispute between two brothers, Taso and Chris Prokopis, over

the ownership of a duplex purchased in Chris' name.

When Chris Prokopis first arrived in the United States in 1952, he lived in Utah with his brother Taso. He then moved to Anchorage in 1962. Taso moved to Anchorage in 1967, when Chris assisted him in securing a temporary summer job at a local dairy. Taso's family did not leave Utah for Anchorage until his employment situation was more secure.

At first, Taso lived with Chris in a small apartment which consisted of a ten-by-twelve room. Chris was to marry soon and needed a larger place to live; about the time Taso arrived, he completed arrangements with the owner-bank to purchase the duplex which is the object of this litigation. As consideration for the purchase, Chris made a cash down payment of $500 and obligated himself to make improvements worth about $2,500 to $3,000, to be completed before the expiration of a one-year limitation period imposed by the bank. He also assumed a twenty-year trust deed note which required monthly payments of $288.

Sometime in July 1967, both brothers were living in the duplex, and Taso assisted Chris in cleaning the premises. Chris testified that he offered Taso the opportunity to move, with his family, into one side of the duplex if Taso would meet one-half the monthly note obligation as well as one-half the utility charges. He denied an intent, at that time, to transfer an undivided one-half interest in the property to Taso.[1]

Taso paid one-half the monthly note obligation for July. Chris then left, in August, for Europe to get married, and Taso paid the entire monthly obligation for August. He also sent Chris some money, approximately $300, to meet additional expenses for his trip. When Chris returned in the latter part of August 1967, he asked Taso about repayment. Taso told him not to worry about the debt; if Taso could find steady employment, the money could be applied towards his share of the down payment. In November 1967, Taso was able to secure permanent employment, and he indicated that he wanted the money credited towards the down payment. Beside the $300 advanced to Chris on his trip, Taso also gave his brother another $100. He presumed the total amount ($400) was one-half the down payment, and Chris admitted that such was the case.

After Chris returned from Europe, both brothers continued work on the duplex. Taso spent approximately 339 hours and $313 on the improvements. Chris felt that Taso had not satisfied his one-half of the down payment improvement obligations but had only performed about one-quarter of the total work. However, the work was completed to the bank's satisfaction. Taso sought to obtain a written agreement in the latter part of 1969, but efforts to put the 1967 oral agreement into writing failed.

In 1970, Chris offered Taso another opportunity to acquire an undivided half interest in the duplex. Chris had plans to raise the structure in order to install a basement. To finance the costs of construction, he negotiated a $6,500 bank loan. If Taso would do one-half the work involved, he would be able to secure an interest in the duplex. The informal agreement, however, was not explicit as to just what constituted Taso's portion of the work, and efforts to put this 1970 arrangement into writing also failed.

Despite this lack of agreement, Taso performed substantial work on the duplex, putting in approximately 1,161 hours and $5,250, bringing his' total investment to 1,500 hours and $5,563 plus half the monthly payments on the home improvement loan and the down payment. Chris had been de-

---

1. Chris testified that he did not offer Taso an interest in the property until August. Taso, however, testified that Chris offered him an undivided one-half interest if he would be- come obligated on the bank transaction; Taso said he rejected this offer because he only had temporary employment at the time.

ducting one-half the interest and one-half the real estate taxes on his federal income tax returns since 1967. And, he did not include the monthly payments from Taso as ordinary income;[2] he claimed this was done on the advice of his bookkeeper. Taso claimed that they had both consulted a tax service at Chris' instigation, and after this consultation, returns were prepared which indicated Taso was actually purchasing an equity and not merely renting space in the duplex.

During this period, friction between the families developed. Tension increased to the point where an argument resulted in a fight which had to be broken up by police. Chris then instituted eviction proceedings in July 1971 in an effort to remove Taso and his family; these proceedings, however, were not pursued although Chris did refuse to accept Taso's checks for July, August and September, and Taso did not pay his share of the utility charges for the latter part of 1971. He did, however, continue payments after this period up until the time of the trial in June 1972. Taso sued for specific performance on an alleged oral contract which would give him an undivided one-half ownership of the duplex and surrounding land. Chris counterclaimed, alleging sole ownership of the duplex and seeking recovery of three months' rent, the unpaid utility charges and the eviction of Taso and his family.

The superior court concluded that Taso's actions constituted sufficient part-performance to take the agreement out of the statute of frauds. But, it also held that the agreement was not specifically enforceable since a contract must be reasonably definite and certain in its terms, and the difficulties in achieving a written agreement indicated that there had been no meeting of the minds on certain key issues.[3] The superior court ruled in favor of Chris on

the rent and eviction claims but did not allow recovery of the utility charges. It also awarded Chris costs and $2,575 in attorneys' fees.

On appeal, Taso presents seven specifications of error. Basically, these seven specifications center on three issues: the existence of a contract sufficiently definite to warrant specific performance; evidence justifying a claim for unjust enrichment; and the propriety of the award of attorneys' fees. Our disposition of the first specification makes it unnecessary for us to consider in detail the remaining two.

Since there were no written documents providing for the transfer of any interest in the duplex in question, the superior court was faced with a statute of frauds problem.[4] With regard to this issue, the superior court held that Taso's possession and his expenditure of time and money for improvements constituted sufficient part performance to take the agreement out of the statute of frauds. Having overcome this obstacle, Taso then had to prove the existence of a contract that was sufficiently definite and certain in its terms to warrant the grant of specific performance.

■■■■ As the superior court recognized, beginning sometime in June 1967 there were discussions between Chris and Taso concerning the possible transfer to Taso of a one-half interest in the duplex owned by Chris. From these discussions, the existence of an offer by Chris to Taso to make such a transfer, or in the alternative, a counter-offer by Taso is discernible. The exact time of the offer, however, is in dispute by both parties. Irrespective of the time an offer was made, there was a binding contract as of November 1967. At that time, Taso acquired permanent employment at a local dairy. Since Chris had borrowed $300 from Taso in August, there

---

2. Since the duplex was purchased in Chris' name, he was personally liable on the note and deed of trust, and Taso made his payments directly to Chris.

3. The trial court also denied Taso's motion to amend the pleadings to conform to the evi-

dence in order to show a claim for unjust enrichment. The court felt that Taso failed to properly plead this claim for relief, and the issue was not tried.

4. AS 09.25.010(a)(6).

was an outstanding debt. As mentioned earlier, Taso wanted to credit the cancellation of the debt plus $100 toward his share of the initial cash down payment. This exchange can best be explained by viewing Taso's request for crediting these amounts for a down payment as an offer. Although the offer did not state the terms of the agreement, it is reasonable to assume that Taso's offer contained the same terms as Chris' initial offer. Chris accepted the tender of $400 as part of the cash down payment, thereby creating a binding unilateral contract.[5] In this case, Chris' conduct can only be explained as an acceptance of Taso's offer. It is reasonable to infer that Chris impliedly promised to perform upon the completion of Taso's acts. This interpretation is supported by the following testimony:

[Plaintiff's attorney]  Q:  .  .  . [L]et me ask you this question: prior to this time and during this year span [1967–1968] that we're talking about, if Nick [Taso] had diligently performed his one-half then is it not true that you would have in all likelihood signed a contract with him and say it's half yours?

[Chris]  A:  Yes.

■ Although the terms of the contract are not specifically expressed, they can be inferred without too much difficulty. Chris purchased the duplex in his own name by assuming a twenty-year trust deed note, by making a down payment of $500, and by becoming obligated to perform improvements on the duplex in the value of $2,500–$3,000. The initial offer to Taso consisted of a half interest in the duplex

provided Taso would assume half of Chris' responsibilities and obligations to the bank. Thus, Taso would be required to contribute his share toward the down payment, pay one-half of the monthly mortgage, and perform one-half of the improvements required by the bank to be completed sometime in June 1968. In addition, Taso would be obligated to pay one-half of the monthly utilities. Taso's offer in November merely incorporated these terms.

Measuring these terms against the standards enunciated in Hollaus v. Arend, 511 P.2d 1074 (Alaska 1973), and Rego v. Decker, 482 P.2d 834 (Alaska 1971), we hold that this agreement is capable of specific performance. In *Hollaus*, we denied specific performance in circumstances where the written contract for the sale of land "fatally omitted or ambiguously referred" to numerous material terms such as an adequate description of the land, a specific reference to any down payment, dates of sale, time of taking possession, transfer of title, commencement of payments, provisions for security, amount of monthly interest payment and rate of interest.[6]

In the case at bar, although there is no written agreement, the terms of this oral contract are, by comparison, more definite than the disputed agreement presented in *Hollaus*. In that case, a precise description of the land was essential because it was not clear which part of the acreage was covered by the contract. In the instant case, there is only one tract of land in question. The division of the property and the duplex presents no problem of indefiniteness. The exchange of $400 in November 1967 eliminates the necessity for

---

5.  Although the offer consists of an act in exchange for a promise, a unilateral contract is created provided the offeree makes an express promise or an implied promise can be inferred by the offeree's conduct.

    In most unilateral contracts, the promise is made by the one making the offer, the acceptance of which is by action or forbearance on the part of the offeree. . . . In some cases, however, the only binding promise is made by the offeree, the consideration

for that promise being service rendered by the offeror or property transferred by the offeror. An offer of this kind has been described, somewhat unhappily, as the offer of an act for a promise. . . . Whether the offeree's promise is express or implied, the contract then being made is unilateral if no return promise by the offeror can be found. (footnote omitted)

1 A. Corbin, Contracts § 71, at 298–99 (1963).

6.  511 P.2d at 1075.

specific reference to a cash down payment. The date of sale is the same as the date of acceptance by Chris (November 1967). The element of possession is not in issue since Taso and his family were living in the duplex. The transfer of title of a one-half interest from Chris to Taso was to occur after Taso had fulfilled his obligation to perform certain improvements which were to be performed within one years of Chris' purchase of the duplex from the bank. As for the commencement of payments, Taso had been making regular monthly payments in fulfillment of Chris' obligation to the bank. These monthly payments included interest payments as well. On the basis of these factual differences, we conclude that the fatal omissions and ambiguous references justifying denial of specific performance in *Hollaus* are not present in the case at bar.

Additional support for the grant of specific performance can be found in *Rego,* where this court conditioned the grant of specific enforcement upon the inclusion of certain provisions in the decree which provided for adequate security for the installment purchase. In reaching this result, we employed several basic contract principles that are equally applicable to the instant case. We relied upon two general considerations that are germane to solving reasonable certainty-specific performance problems:

> On the one hand, courts should fill gaps in contracts to ensure fairness where the reasonable expectations of the parties are fairly clear. . . . On the other hand, the courts should not impose on a party any performance to which he did not and probably would not have agreed. Where the character of a gap in an agreement manifests failure to reach an agreement rather than a sketchy agreement, or where gaps cannot

be filled with confidence that the reasonable expectations of the parties are being fulfilled, then specific enforcement should be denied for lack of reasonable certainty.[7]

In applying these two considerations, we think the reasonable expectations of the parties are readily ascertainable. Chris, under cross-examination, testified that a conveyance of an undivided one-half interest would have occurred if Taso had performed his share of the home improvements required by the bank. The terms of the oral agreement were reasonably definite and certain. The oral agreement required Taso to pay one-half of the down payment and monthly mortgage payment, as well as to perform one-half of the home improvements and pay his share of the monthly utilities. There do not appear to be any major gaps or fatal omissions in the agreement as in *Hollaus.*[8] The only possible omission concerns securing future payments on the monthly obligations owed by Chris to the bank. The trial court, as in *Rego,* can similarly fashion an appropriate equitable decree to provide assurance that each payment by Taso will be made. Such a result is compelling, particularly in view of Taso's performance, possession, and tender of the cash down payment. Having established that the terms of the contract are not so fatally defective or uncertain as to deny the grant of specific performance, the remaining problem concerns the degree of Taso's performance in relation to the 1967 oral agreement.

Taso performed a variety of tasks: cleared weeds and filled up holes in the back yard; sanded and painted the outside of the building; painted the inside of both apartments; worked on a driveway over a period of years; removed a tree stump; with the assistance of his brother, seeded the lawn; dug holes to install cement

7. 482 P.2d at 837. *See* 5A A. Corbin, Contracts § 1174, at 293 (1964).

8. Although a greater degree of certainty is required in seeking specific performance than in seeking damages, this court stated in *Rego*

that: "Less certainty is required where the party seeking specific performance has substantially shifted his position in reliance on the supposed contract, than where the contract is wholly unperformed on both sides." 482 P.2d at 838.

porch slabs; and repainted his side of the duplex prior to 1970. Approximately 339 hours were expended in these endeavors at a personal expense of $313. The total improvements were approved by the bank. Our review of the record convinces us that Taso substantially performed according to the terms of the 1967 oral agreement. Our conclusion is further supported by Taso's investment of 1,500 hours of labor and expenditure of $5,563 of his own money on the duplex during the time period from 1967 to 1971.

Accordingly, we hold that the superior court erred in denying specific performance. An equitable decree should be fashioned granting Taso a half interest in the property. Although Taso's expenditure of money and labor constituted substantial performance to warrant specific performance, our review of the record does not reveal any specific findings by the superior court as to whether Taso fully performed his obligations under the 1967 oral agreement. On remand the superior court should determine the precise extent of Taso's performance under the contract. In the event it is determined that Taso did not completely fulfill his obligations under the 1967 oral agreement, appropriate provisions should be incorporated in the decree providing for full performance on Taso's part. In addition, the superior court on remand should make provision for adequate security on Taso's obligation to make payments on the balance of the purchase price. Since the issue of specific performance is resolved in favor of Taso, there is no need to consider his unjust enrichment claim. Our decision on the principal issue in this case necessitates vacation of the superior court's award of costs and attorneys' fees to Chris. Upon remand, the superior court necessarily will have to redetermine this issue. The superior court's decision respecting the utility charges is affirmed; the decision respecting liability for three months' rent is modified to reflect that the amount due is payment for the monthly obligations owed under the oral agreement. So modified, the judgment of the superior court respecting Taso's obligations is affirmed. This case is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings.

ERWIN and FITZGERALD, JJ., not participating.