**William KIERNAN and Christine Pfeif-fer, individually and d/b/a American Towing & Recovery, Appellants,**

**v.**

**Willie CREECH, Justin Creech, and Vul-can Towing & Recovery, Inc., an Alas-ka corporation, Appellees.**

No. S–13230.

Supreme Court of Alaska.

Jan. 20, 2012.

Joe P. Josephson, Josephson & Associates P.C., Anchorage, for Appellants.

Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, EASTAUGH, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

Two parties agreed orally to purchase a commercial towing lot, even though title to the lot would be in one party's name only. The parties agree that they split equally all costs associated with the property, including purchase and development costs, and that they used the property jointly. They dispute whether their oral agreement provided that . they would co-own the property, or that the non-titled party would lease from the title-holder. The title-holder moved for summary judgment on the ground that the statute of frauds barred any oral co-ownership agreement between the parties. The superior court granted the motion. The non-titled party appeals.

We reverse because the substance of the oral agreement is a disputed fact material to resolving whether an exception to the statute of frauds applies. If the non-titled party can prove by clear and convincing evidence that the parties had a contract for co-ownership with definite terms, he may be able to succeed on his claims that promissory estoppel or the part performance doctrine make this contract enforceable despite the statute of frauds.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 2001, Bill Kiernan owned American Towing & Recovery (Kiernan) and Willie Creech owned Vulcan Towing & Recovery (Creech).[1] That year Kiernan and Creech decided to share a lot for their towing businesses. Kiernan asserts that they agreed to buy the lot jointly, but, because Kiernan had a substantial outstanding IRS debt, they agreed to put the lot in Creech's name alone. Creech asserts that they agreed Creech

would buy the lot and Kiernan would have an informal lease-to-purchase agreement if Kiernan resolved his IRS problems. They agree that they were to split all costs associated with the lot evenly. The parties did not put their agreement in writing. While Creech asserts that, under the oral agreement, Kiernan was merely a lessee with a conditional option to purchase a 50% interest, Kiernan testified in a sworn deposition that, in exchange for paying half of the costs, he was to receive a 50% ownership in the lot.

Creech purchased the lot in the name of his towing company only, and arranged the bank loan. Kiernan paid half of the earnest money, half of the down payment, and half of the closing costs to Creech. The parties evenly split the costs of improving the property for their use, including building a drainage culvert, filling the lot and paving the driveway, fencing the lot, hooking up utilities, and installing lights. Each month Kiernan paid Creech $776.21, which Kiernan claimed was half of the monthly mortgage payment. Kiernan also paid Creech half of the utility costs and property taxes. As of May 2008, Kiernan had not solved his problems with IRS debt.

The relationship between the parties eventually broke down. In 2007 Kiernan became aware that Creech had taken out a second mortgage on the property without telling him, and Kiernan sued Creech.

### B. Proceedings

Kiernan brought suit on several grounds, all of which rested on one of two theories: (1) that Kiernan and Creech had an enforceable agreement to co-own the lot, or (2) that Kiernan and Creech were partners under the Uniform Partnership Act. Creech moved for summary judgment on both the ownership and partnership theories. Kiernan opposed only the motion as to the ownership theories. Superior Court Judge Peter A. Michalski granted summary judgment for Creech on the grounds that the statute of frauds made any oral co-ownership agreement between

---

1. Subsequently, both Kiernan and Creech transferred ownership in their towing companies to one of their children. At the time of the superior court's order Christine Pfeiffer, Kiernan's daughter, owned American Towing & Recovery and Justin Creech owned Vulcan Towing & Recovery.

the parties unenforceable and that no exception to the statute of frauds applied.

The superior court first rejected Kiernan's argument that the part performance exception to the statute of frauds applied, holding that Kiernan's alleged part performance was "consistent with either a purchase or a lease arrangement," and not "notorious." The court also rejected Kiernan's argument that the promissory estoppel exception to the statute of frauds applied, because there was "substantial ambiguity concerning what the parties allegedly agreed to." The court concluded that "because of the uncertainty as to the terms of agreement, the exceptions of part performance and estoppel do not apply." Holding that Kiernan's remaining claims required either an enforceable co-ownership agreement or partnership to sustain them, the court dismissed them.

Kiernan appeals.

## III. STANDARD OF REVIEW

■■■ We review a superior court's grant of summary judgment de novo.[2] Summary judgment is appropriate only when the moving party establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.[3] We draw all reasonable factual inferences in favor of the party against whom summary judgment was granted,[4] in this case, Kiernan. When we review a grant of summary judgment and disputed facts exist, we assume to be true the sworn allegations of the party against whom summary judgment was granted.[5]

## IV. DISCUSSION

### A. The Promissory Estoppel Exception To The Statute Of Frauds May Apply In This Case.

■■■ The superior court rejected Kiernan's argument that the promissory estoppel exception to the statute of frauds applies in this case "because of the uncertainty as to the terms of agreement." But the terms of the agreement are a disputed question of material fact, and the agreement Kiernan alleges existed could be sufficiently specific to support promissory estoppel. If he can establish at trial, by clear and convincing evidence,[6] the terms of the agreement that he alleges, it is possible that he could succeed on this claim.

■■■ The doctrine of promissory estoppel allows the enforcement of contract-like promises despite a technical defect or defense that would otherwise make the promise unenforceable.[7] The elements of promissory estoppel are: "(1) an 'actual promise' that induces the action or forbearance; (2) the action or forbearance was actually foreseen or reasonably foreseeable; (3) the action or forbearance amounted to a substantial change of position; and (4) enforcement of the promise is necessary in the interest of justice." [8]

2. *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 664 (Alaska 2002).

3. *Id.*

4. *Id.*

5. *Angleton v. Cox*, 238 P.3d 610, 612 n. 1 (Alaska 2010) (citing *Mat–Su/Blackard/Stephan & Sons v. State*, 647 P.2d 1101, 1102 n. 1 (Alaska 1982)).

6. The clear and convincing evidence standard applies to promissory estoppel claims. *See King v. Richards*, 584 P.2d 50, 51 (Alaska 1978). Creech argues that there is a presumption that he is the sole owner because he is the sole recorded owner, and he cites *Sugg v. Morris*, 392 P.2d 313 (Alaska 1964), in support of this argument. That case did not discuss the statute of frauds. Although we agree with Creech that such a presumption exists, we disagree that it adds anything to the barrier that the statute of frauds creates in this case. The clear and convincing evidence standard does not get any higher when the opposing party is also the sole title holder.

7. *Alaska Trademark Shellfish, LLC v. State, Dep't of Fish & Game*, 172 P.3d 764, 768 (Alaska 2007) (quoting *Brady v. State*, 965 P.2d 1, 10 (Alaska 1998)).

8. *Id.* at 766 (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1284 (Alaska 1985)). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981) (establishing similar elements when defect in the contract is failure of consideration); RESTATEMENT (SECOND) OF CONTRACTS § 139 (1981) (establishing similar elements when defect in contract is non-compliance with the statute of frauds).

We have both upheld and denied the use of promissory estoppel as an exception to the statute of frauds in the case of oral agreements that last for more than one year. We upheld it in *Alaska Democratic Party v. Rice,*[9] observing that "[c]ommentators have noted that 'there is no question that many courts are now prepared to use promissory estoppel to overcome the requirements of the statute of frauds.'" In that case we upheld an oral employment agreement lasting two years.[10] We denied the use of promissory estoppel in *Valdez Fisheries Development Ass'n v. Alyeska Pipeline Service Co.,*[11] because the alleged oral contract in that case (for lease of land) did not establish two critical terms: the price and duration of the lease.[12]

Creech argues that, like the agreement in *Valdez Fisheries*, the agreement in this case is too indefinite to support the use of promissory estoppel to overcome the statute of frauds, but he points only to the essential dispute in this case: whether the contract was for an ownership share or a lease arrangement.[13] We conclude that this issue is not appropriate for resolution on summary judgment. As noted, the alleged oral contract to lease in *Valdez Fisheries* unquestionably did not provide for price and duration, two terms material to a lease.[14] The oral contract that Kiernan alleged in his sworn deposition does not suffer these disabilities: A sale has no duration, and the price was half of all costs associated with ownership of the property. In return for paying half of the costs, Kiernan alleges that he would receive a 50% ownership interest in the lot. According to Kiernan, his ownership interest vested at the time of purchase. And the parcel of land in question is well-defined. Taking Kiernan's sworn allegations as true, as we must in reviewing a grant of summary judgment,[15] we conclude that a trier of fact could determine that there are no material ambiguous terms. There is simply a straightforward dispute of fact for the trier to resolve: whether the agreement called for co-ownership or a lease.[16]

We remand because promissory estoppel may apply in cases where the key terms of

9. 934 P.2d 1313 (Alaska 1997).

10. *Id.* at 1316–17 (citing 2 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 281A (1950 & Supp. 1966)).

11. 45 P.3d 657 (Alaska 2002).

12. *Id.* at 668–69.

13. Creech's appellate argument on this point follows:

> Kiernan claims that Willie Creech promised him a half-interest in the Vulcan property, Willie contends that they had a contingent lease-purchase arrangement by which he promised to make Kiernan a co-owner of the property and apply his lease payments to the purchase *if Kiernan ever got his financial affairs in order, such that a co-owner relationship would not be risky to Willy Creech's own financial interests*—something that never happened.

(Emphasis in original; internal citations omitted.) And we note that in the superior court Creech did not assert facts under oath that would have established that key terms of the contract were too indefinite to enforce.

14. 45 P.3d at 668–69.

15. *See supra* note 5 and accompanying text.

16. Kiernan also argues that the critical language in *Valdez Fisheries*—"promissory estoppel cannot be used to defeat the statute of frauds' requirement that an agreement for a lease with a term that exceeds one year must be in writing where ... the purported oral agreement contains substantial ambiguity as to key terms," 45 P.3d at 670,—was dicta, but we disagree. In *Valdez Fisheries*, the plaintiff and defendant were in a three-way transaction in which the plaintiff would purchase land from a third party and the defendant would lease it. *Id.* at 663. The plaintiff believed that the defendant had agreed to lease the property, and in reliance on that agreement, purchased the land to be leased. *Id.* at 663–64. But the plaintiff did not even claim that the parties had reached an agreement about the price or term of the lease. *Id.* at 665. The plaintiff alleged two bases for the contract: first, a letter stating an intent to enter "the process of negotiating a contract as soon as possible"; and second, an oral promise that the defendant would lease the property, although that oral promise did not include price or duration for the lease. *Id.* at 668. We first held that the letter, which only promised to negotiate, was not an enforceable contract. *Id.* at 667. We then held that the alleged oral promise was too indefinite to support promissory estoppel: "We ... decline to extend [Restatement (Second) of Contracts § 139] to cases involving the sale or lease of real estate[] in which the purported oral agreement is ambiguous as to key terms." *Id.* at 669.

the oral agreement are not ambiguous.[17] We thus join the many jurisdictions that recognize some form of promissory estoppel as an exception to the statute of frauds in land transactions.[18]

### B. The Part Performance Exception To The Statute Of Frauds May Apply In This Case.

The part performance doctrine is a particular application of promissory estoppel in the context of land transfer contracts that do not comply with the statute of frauds.[19] Under the part performance doctrine, an oral agreement for the sale of land may be specifically enforceable if the purchaser has acted in reliance on the agreement by, in addition to paying some consideration, taking possession of the land and making improvements on the land.[20] It also requires that the contract for sale be "reasonably definite and certain as to its terms."[21] Thus, the doctrine of part performance is similar to the doctrine of promissory estoppel in that the purchaser must substantially change his or her position—by payment, possession, and improvement of the property—pursuant to an oral agreement.

The superior court, addressing part performance, stated why it rejected Kiernan's argument based on the doctrine:

The plaintiffs argue that this case should be taken out of the Statute of Frauds by the doctrines of promissory estoppel or part performance. However, part performance requires first, that plaintiffs show by clear and convincing evidence that there was payment, continuous and notorious use and that improvements were made to the property. Second, plaintiffs must prove the existence of an oral contract sufficiently definite and certain in its terms to warrant a grant of specific performance. Although plaintiffs provided one-half of the down payment and made improvements to make the property a tow lot, these actions are consistent with either a purchase or a lease agreement. Further, Kiernan's use was consistent as a leaseholder and cannot be construed as notorious.... Therefore, because of the uncertainty as to the terms of agreement, the exceptions of part performance and estoppel do not apply.

We consider each of these arguments in turn.

First, we disagree that Kiernan's performance is consistent with a lease of half the property. Although Creech claims that the parties agreed to a lease in which Kiernan would "pay half of what it would cost to get into this property," these are very unusual terms. It is not normal for a lease to require the tenant to pay the down payment, earnest money, and closing costs on property the tenant leases. Even the most stringent commercial leases—in which the tenant pays real

---

17. Neither party discusses whether Kiernan's actions were in reliance on the alleged oral promise, nor do they discuss the question whether injustice can only be avoided by enforcement of the oral agreement. Kiernan will have the burden of establishing these elements on remand.

18. See, e.g., Jacobson v. Gulbransen, 623 N.W.2d 84, 90–91 (S.D.2001); Nessralla v. Peck, 403 Mass. 757, 532 N.E.2d 685, 688 (1989) (quoting Glass v. Hulbert, 102 Mass. 24, 36 (1869)) (stating doctrine only applies "where the party seeking relief suffers 'the infliction of an unjust and unconscientious injury and loss' "); Landow v. Georgetown–Inland West Corp., 454 A.2d 310, 313–14 (D.C.1982); Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 272–73 (1954).

19. See RESTATEMENT (SECOND) OF CONTRACTS § 129 (1981) cmt. a (explaining that § 129 restates the part performance doctrine); RESTATEMENT (SECOND) OF CONTRACTS § 139 cmt. a (noting "this Section overlaps in some cases with rules based on estoppel or fraud.... Sections 128 and 129 state particular applications of the same principle to land contracts....").

20. See Mitchell v. Land, 355 P.2d 682, 686 (Alaska 1960) ("It is a well established principle of law that the mere payment of the purchase price by the vendee, without other acts, is not sufficient as an act of part performance to take an oral contract for the sale of real estate out of the Statute of Frauds.... However, when the vendee takes and retains possession in pursuance of the verbal agreement and makes improvements upon the land, he thereby acquires an equitable estate in the premises."); Jackson v. White, 556 P.2d 530, 534 n. 7 (Alaska 1976) (noting that party "met the requirements for part performance ...—possession and improvements in reliance on the verbal agreement" (citations omitted)).

21. Rego v. Decker, 482 P.2d 834, 837 (Alaska 1971) (quoting Alaska Creamery Prods., Inc. v. Wells, 373 P.2d 505, 510 (Alaska 1962)).

estate taxes, mortgage interest, maintenance, and insurance—do not require the tenant to cover the landlord's expenses in purchasing the property.[22] In fact, one of the generally accepted advantages of such a lease, from the tenant's point of view, is that it gives ownership-like control without requiring a capital investment.[23] Here, however, the evidence suggests that Kiernan has made one-half of all capital expenditures. Thus, we are not convinced that Kiernan's payments are "consistent with either a purchase or a lease agreement" because they are quite unlike the payments a lessee would make.

Furthermore, Creech has not proven the existence of a lease any more than Kiernan has proven the existence of a co-ownership agreement. Creech argues that Kiernan's actions were "consistent not only with an intended purchase but also with the lease that is shown by testimony and the consistent history of monthly receipts for 'rent.' " However, this is a factual argument appropriately directed to the trier of fact, not one sufficient for summary judgment as a matter of law. Thus, we conclude that it was error for the superior court to rely on this rationale in granting Creech summary judgment.

 We also disagree with the superior court's assertion that part performance requires "continuous and notorious" possession in all cases, including cases such as this one where the alleged oral contract is for joint ownership and possession. It is true that we generally require exclusive and notorious possession.[24] But we are persuaded by the opinions of courts from other jurisdictions that have waived these requirements when faced with oral contracts providing that the parties were to share the property.[25] Those courts hold that, in such cases, the party asserting part performance must have possessed the property to the full extent of the alleged oral contract.[26] We adopt that approach. If the superior court on remand finds that the parties' agreement called for joint possession of the property, then the court should waive the exclusivity and notoriety requirements, because they would be impossible to meet under these circumstances.

Finally, in addition to payment, possession, and improvements, a party asserting the part

**22.** *See, e.g., Sauve v. Winfree*, 985 P.2d 997, 998 (Alaska 1999) (describing a " 'triple-net' lease" as requiring the tenant to pay "all insurance, taxes, and costs of maintenance and repair for the leased premises"); Black's Law Dictionary 972 (9th ed. 2009) ("Lease: Net–Net–Net Lease": "A lease in which the lessee pays all the expenses, including the mortgage interest and amortization, leaving the lessor with an amount free of all claims.").

**23.** *See Wyle Labs., Inc. v. 128 Maryland Assocs., LLC*, No. B158163, 2003 WL 21546112, at *7 (Cal.App. Sept. 4, 2003) ("The [triple net] lease entitles the landlord to rent net of costs for maintenance, repair, replacement, insurance, and taxes. The long-term net lease is essentially a financing device that gives the tenant the advantages of ownership without the investment of capital or direct obligation under a deed of trust and gives the owner of the property a return on his or her investment without the active responsibilities of investment management.") (quoting 6 Matthew Bender, California Real Estate Law & Practice § 154.10[2], at 154–10.1).

**24.** *Mitchell*, 355 P.2d at 686. In this regard, Creech argues that "notorious" possession means that the owner could "see that a hostile flag was being flown over his property." *Nome 2000 v. Fagerstrom*, 799 P.2d 304, 309 (Alaska 1990) (quoting *Shilts v. Young*, 567 P.2d 769, 776 (Alaska 1977)) (discussing "notorious" in the context of adverse possession). Because the parties shared the property amicably, Creech argues, Kiernan's possession was neither exclusive nor notorious.

**25.** *See, e.g., In re Shinoe's Estate*, 212 Wis. 481, 250 N.W. 505, 508 (1933) (holding that, although generally part performance requires notorious, exclusive possession, "where the contract is for the conveyance of an undivided interest in the premises, the promisee who is in possession jointly with the promisor is in possession in the only way that the circumstances permit, and this should, it would seem, be sufficient"); *Brown v. Freudenberg*, 106 Ind.App. 692, 17 N.E.2d 865, 868 (1938) (holding that possession need not be exclusive and notorious for application of part performance where defendant promised that if plaintiff would live with and care for defendant for the rest of defendant's life, defendant would transfer property to plaintiff at defendant's death).

**26.** *Brown*, 17 N.E.2d at 868 ("We believe it to be the rule that where the grantee takes such possession of the property as is consistent with the existing conditions and circumstances imposed by the contract ... specific performance should not be denied for the sole reason that the possession taken was not exclusive in the ordinary meaning of the term."). *Shinoe's Estate*, 250 N.W. at 508.

performance exception to the statute of frauds must show that the oral contract was sufficiently definite to be specifically enforced.[27] As discussed above, the dispute over the terms of the agreement renders this case inappropriate for summary judgment, but it does not necessarily establish that the terms of the agreement were uncertain or ambiguous. If Kiernan can prove, by clear and convincing evidence, that the terms of the contract were as he alleges, and were therefore not ambiguous, he will have met the requirement for relief under the contract.

### C. Kiernan's Other Claims

■ Because we have determined that factual disputes precluded summary judgment on Creech's argument that defenses to the statute of frauds were not viable, we also conclude that Kiernan's numerous other claims resting on a co-ownership or contract theory must be remanded for further proceedings.[28] These claims are breach of fiduciary duty, breach of covenant of good faith and fair dealing, breach of contract, and violation of the Alaska Securities Act. We likewise conclude that it was error to dismiss Kiernan's unjust enrichment claim.[29] But we reject Kiernan's argument that the superior court erred in dismissing his claim for conversion on statute of limitations grounds. That claim was premised upon his exclusion

from the property,[30] and Kiernan admitted he knew about the exclusion at the time that the limitation period began to toll. Therefore, the superior court properly barred the claim.

### V. CONCLUSION

Because the terms of the agreement between Kiernan and Creech are in dispute and are material to resolution of Kiernan's contract-based claims, we REVERSE the grant of summary judgment on the contract-based claims and REMAND them to the superior court for proceedings consistent with this opinion. Because the unjust enrichment claim does not depend on the existence of a contract, we REVERSE the dismissal of that claim and REMAND for proceedings consistent with this opinion. Because the superior court correctly dismissed the conversion claim on statute of limitations grounds, we AFFIRM the dismissal of that claim.

CHRISTEN, Justice, with whom FABE, Justice, joins, dissenting.

CHRISTEN, Justice, with whom FABE, Justice, joins, dissenting.

I disagree with the court's decision to expand the promissory estoppel and part performance exceptions to the statute of frauds. In my view, the promise in this case was

---

**27.** *Prokopis v. Prokopis,* 519 P.2d 814, 816 (Alaska 1974). Kiernan compares his case to *Prokopis,* but we do not find it helpful here. Although it arose from similar facts, the parties in that case did not appeal the holding that the non-titled party's performance was sufficient to meet the requirements of payment, possession, and improvements. In that case, the parties had no written agreement, but the party without title took possession of half a duplex and paid half the costs and mortgage to the title-holder believing he was getting a half interest. *Id.* at 815–16. The trial court found the non-titled party credible, and held that an oral agreement for co-ownership existed, as opposed to a lease, and that the plaintiff met the requirements of payment, possession, and improvements. *Id.* at 816. The title-holder did not appeal that ruling. *Id.* The only dispute was whether the oral contract was sufficiently definite to be enforced. *Id.* The court did not discuss the problems that the superior court found this case to present (i.e., the consistency of the performance with a lease or the requirement that possession be exclusive and notorious).

**28.** Neither party has addressed the statutory exception to the statute of frauds articulated at AS 09.25.020(4). We express no opinion regarding the application of this exception to the present case.

**29.** The superior court dismissed this claim (and the other claims just remanded) on the grounds that it must fail because Kiernan had failed to show that a contract existed. But recovering restitutionary damages under a theory of unjust enrichment "does not depend on any actual contract, or any 'agreement between the parties, objective or subjective.'" *George v. Custer,* 862 P.2d 176, 180 (Alaska 1993) (internal citation omitted).

**30.** The superior court's order states: "The alleged 2004 conversion claim for exclusion from the premises could be a valid leasehold claim, but it is time barred by the statute of limitations."

insufficiently definite as a matter of law to be enforced by the promissory estoppel exception; the alleged oral contract was likewise insufficiently definite to permit application of the part performance exception. I would affirm the superior court's grant of summary judgment on these claims, but I would reverse the superior court's summary judgment on the unjust enrichment claim and remand that claim for trial.

The key dispute between the parties here concerns the terms of their contract. Did they enter into a lease agreement with an option for purchase in the event Kiernan resolved his troubles with the IRS, as Creech contended? Or did they agree to purchase the property jointly, with Kiernan taking the role of a "silent partner" because of his IRS debt, as Kiernan maintained? It was fundamentally unclear whether the parties entered into a lease-purchase agreement or a contract to buy the property jointly. And because the contract involved real estate, this case fits squarely within the coverage of the black-letter rule of the statute of frauds.[1] The court's decision ignores the sound and well-established policy reasons for the legislature's enactment of the statute of frauds, and permits Kiernan the opportunity to enforce a contract that he concedes was based on his desire to hide assets from his creditors.

Although the court characterizes the dispute in this case as "a straightforward dispute of fact as to the existence of the contract for the trier [of fact] to resolve," whether a contract was ever formed is a distinct question from whether the contract, if formed, is unenforceable because of the statute of frauds.[2] We have adopted the part performance exception to the statute of

frauds when a buyer of real property takes and retains possession of the property and makes improvements on the land in reliance on an oral agreement.[3] But when presented with claims for specific performance under the part performance doctrine, we have required that the party seeking enforcement must show by clear and convincing evidence that the "contract [was] sufficiently definite and certain in its terms to warrant the grant of specific performance."[4] Construing the evidence in the light most favorable to Kiernan, the parties' agreement simply was not sufficiently definite or certain to warrant specific performance. Kiernan testified about the agreement as follows:

Q: Okay. Why were you making your payments to Willie and Vulcan Towing instead of to the bank and Prudential and the other parties on the other side of the transaction?

A: To protect Willie's interest, I agreed to keep my name off of it.

Q: How would—

A: Until I got my IRS debt cleared up.

In addition, Kiernan actually indicated that he did not know what type of ownership rights he had in the property, testifying that he and Creech "never talked about" what the agreement allowed him to do with his alleged interest in the property. Kiernan's testimony demonstrates that a material term of the contract—what type of interest Kiernan had in the property—was absent. Using the part performance doctrine, we have enforced an oral real estate contract when "the terms of the contract ... can be inferred without too much difficulty."[5] But here, even accepting Kiernan's account of the contract, there is no fixed time for his performance of the condi-

---

1. AS 09.25.010(a)(6) provides that an agreement for "the sale of real property or any interest in real property" is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged.

2. *See Salmine v. Knagin*, 645 P.2d 148, 150–51 (Alaska 1982) (citing RESTATEMENT (SECOND) OF CONTRACTS § 20 (1981)) (noting material misunderstanding can prevent contract formation). The parties here appear to agree that they entered into a contract but they do not agree upon its terms. Even if the terms of their agreement could be determined, violation of the statute of

frauds makes a contract unenforceable, not void. *See* AS 09.25.010(a). The legislature set out exceptions to the statute of frauds that make an otherwise unenforceable contract enforceable. *See* AS 09.25.020.

3. *Jackson v. White*, 556 P.2d 530, 533 n. 7 (Alaska 1976).

4. *Id.* at 533–34.

5. *Prokopis v. Prokopis*, 519 P.2d 814, 817 (Alaska 1974).

tion related to his IRS debt or for official transfer of title of his interest.[6] The lack of a deadline by which Kiernan was to fulfill his obligation and the lack of a mechanism to transfer title are fatal to the enforceability of the contract.

In addition to the lack of definite terms in the parties' agreement, the superior court could not order specific enforcement of the alleged real estate contract. Even accepting Kiernan's version of the contract, he had not performed his part of the bargain because he had not "cleared up" his IRS debt. Kiernan admitted at his deposition that he had not yet paid off his IRS debt, and by the time the superior court heard the motion for summary judgment, the IRS had filed a lien against Kiernan. Kiernan himself stated that he agreed to "keep his name off" the property until he "got [his] IRS debt cleared up" yet he never satisfied this alleged contract term. In my opinion, Kiernan's testimony, taken as true at the summary judgment stage, establishes that the contract was too indefinite to allow specific performance; the part performance doctrine could not apply.

In *Valdez Fisheries*, we declined to extend the promissory estoppel exception to the statute of frauds "to cases involving the sale or lease of real estate, in which the purported oral agreement is ambiguous as to key terms."[7] The court today interprets this sentence as permitting promissory estoppel to take an oral real estate agreement outside the statute of frauds when the terms of the oral contract are not ambiguous. But there is simply no way to characterize the terms of the oral agreement in this case as "not ambiguous." When parties cannot agree whether their oral real estate contract was a lease-purchase agreement or an outright purchase, the agreement can only be termed ambiguous as to key terms. Kiernan's case thus fits squarely within our holding in *Valdez Fisheries*—it involves real property and an ambigu-

ous oral contract. This case illustrates the reasons why the legislature adopted the statute of frauds in the first place. As we explained in *Valdez Fisheries:*

> The statute of frauds serves many purposes. First, it provides certain, consistent, and predictable principles to guide negotiators. It recognizes the inherent evidentiary worth of written evidence, and the potential injustice created by relying on the memories of interested parties to provide the exact language of an agreement, which is necessary to discern the limits of the promise. It also recognizes the natural tendency of peoples' memories to contour the words they recall to fit their understanding of the agreement. The statute of frauds encourages people to commit their agreements to writing, and the process of putting the agreement in writing helps impress upon them the importance of their agreements. It reduces litigation over alleged oral contracts. Finally, a limited application of exceptions to the statute of frauds preserves the legislative intent behind the statute, and gives effect to the legislative judgment that the benefits conferred by the statute outweigh the potential injustice produced by its application.[8]

This case, like *Valdez Fisheries*, "implicate[s] the concerns motivating the statute of frauds."[9] Because there is no writing memorializing the contract here, the superior court must "rely[ ] on the memories of interested parties" to determine the material terms of a real estate contract.[10] Presumably, those memories could "contour the words they recall to fit their understanding of the agreement."[11] Expanding promissory estoppel in this case does not "encourage[ ] people to commit their agreements to writing" to "impress upon them the importance of their agreements," nor does it "reduce[ ]

---

**6.** *Cf. Hollaus v. Arend*, 511 P.2d 1074, 1075 (Alaska 1973) (refusing to enforce writing for land sale when writing had no date for transfer of title and no terms relating to exercise of option to purchase).

**7.** *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 669 (Alaska 2002).

**8.** *Id.* (citations omitted).

**9.** *Id.*

**10.** *Id.*

**11.** *Id.*

litigation over alleged oral contracts."[12] In short, expansion of promissory estoppel here goes against the sound policies underlying the statute of frauds.

I disagree with the court's conclusion that the issue "whether the contract was for an ownership share or a lease arrangement" is not appropriate for summary judgment because the contract Kiernan described did not "suffer [the same] disabilities" of lack of price and duration as the contract at issue in *Valdez Fisheries*. Even if the court credited Kiernan's characterization of the contract as an outright sale which hid his share in the property until he "cleared up" his debt to the IRS, the contract was missing a critical element—a date by which Kiernan had to meet his obligation. Kiernan alleged that the parties agreed to purchase the lot jointly in 2001, yet he still had an outstanding IRS debt in 2008, when the court considered the summary judgment motion. Setting aside the important question whether an oral contract motivated by a desire to hide assets from the IRS would be unenforceable as against public policy[13]—an outcome permitted by the court's decision—the existence of such a contract raises numerous problems. Would Creech have been required to seek Kiernan's permission to sell the property, even though Kiernan's name was not on the title? How could third parties protect themselves from a claim by Kiernan if Creech sold the lot? Kiernan himself was unsure of the nature of his interest in the property—he testified that he did not know if he could transfer his interest in the property to his daughter.

To accept Kiernan's version of the contract is to endorse the use of oral contracts expressly intended to prevent third parties—all of Kiernan's creditors, and specifically the IRS—from possibly attaching his interest in the property. Section 139 of the Restate-

ment sanctions using promissory estoppel when a contract would be unenforceable under the statute of frauds "if injustice can be avoided *only by enforcement of the promise*."[14] Because any injustice to Kiernan could be avoided by permitting his unjust enrichment claim to proceed, there is simply no justification for extending the promissory estoppel exception of the statute of frauds to real estate contracts in this case.

In spite of my disagreement with the court, I would not affirm the superior court's summary judgment on all of Kiernan's claims. I would hold that the superior court erred by dismissing Kiernan's claim for unjust enrichment. The superior court decided that Kiernan's unjust enrichment claim failed "without an underlying contract or partnership." But a claim for unjust enrichment "does not depend on any actual contract, or any agreement between the parties, objective or subjective."[15] There are three essential elements of unjust enrichment: "1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof."[16]

In *Mitchell v. Land*, we affirmed the trial court's refusal to enforce an oral contract for the sale of an easement as barred by the statute of frauds, but we remanded the case for consideration of "relief as justice might have called for"—even though the plaintiff's complaint did not include a claim for equitable relief or compensatory damages—because the complaint alleged the plaintiff paid $300 and received nothing in return.[17] We held "where a party to a contract unenforceable by reason of the Statute of Frauds refuses to go on with the contract after having received a part of the consideration from the

---

12. *Id.*

13. *See Pavone v. Pavone*, 860 P.2d 1228, 1231 n. 2 (Alaska 1993) (setting out rule from Restatement about when contract is unenforceable as being against public policy).

14. RESTATEMENT (SECOND) OF CONTRACTS § 139(1) (1981) (emphasis added).

15. *Darling v. Standard Alaska Prod.*, 818 P.2d 677, 679 (Alaska 1991) (quoting *Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987)) (internal quotation marks omitted).

16. *Alaska Sales & Serv., Inc.*, 735 P.2d at 746.

17. 355 P.2d 682, 687 (Alaska 1960).

other party, the consideration received by him may be recovered." [18] The Restatement likewise permits restitution under a contract that is unenforceable because of the statute of frauds.[19]

Viewing the evidence in the light most favorable to the non-moving party, Kiernan showed that he conferred benefits on Creech. Kiernan paid half of the earnest money and closing costs on the property; he supplied improvements that benefitted both businesses; he assisted in developing the property by applying for permits from the city; and he joined Creech in opposing a development in the area that could have damaged the property. Although the superior court noted that these actions were consistent with a lease agreement, they were also consistent with a joint-purchase agreement, so summary judgment was improper.[20] Kiernan also showed that Creech appreciated the benefit. Viewing the evidence in Kiernan's favor, he showed that he made substantial improvements that benefitted Creech's business. Finally, Kiernan created a factual issue about whether it would be unjust to permit Creech to retain the benefits. In my view, material factual issues prevented the superior court from entering summary judgment on Kiernan's unjust enrichment claim. I would reverse the superior court's summary judgment on that count.

Because the parties' agreement was too ambiguous as a matter of law for the superior court to order specific performance, Kiernan should not prevail under the part performance doctrine. Promissory estoppel should not be expanded to include real estate contracts in this case: section 139 of the Restatement only applies "if injustice can be avoided only by enforcement of the promise." [21] Kiernan has another remedy available—an unjust enrichment claim—so injustice can be avoided without broadly expanding the promissory estoppel exception to the statute of frauds. In my view, the

court's expansion of the exceptions to the statute of frauds undercuts the purposes of this well-settled rule of law. I therefore respectfully dissent.

chasing the real property he will rent is "very unusual" and "not normal."

---

**18.** *Id.*

**19.** Restatement (Second) of Contracts § 375 (1981).

**20.** I agree with the court that a lease requiring the tenant to pay half the closing costs for pur-

